**Marvin BURROUGHS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 304, 2009.

Supreme Court of Delaware.

Submitted: Nov. 3, 2009.
Decided: Jan. 26, 2010.
Revised: Feb. 3, 2010.

---

**32.** Del.Code Ann. tit. 13, § 1106A(b)(2) (2009) (citing 73 Del. Laws, c. 171, § 10).

**33.** *D.B.Y. v. D. R., Jr.,* 2004 WL 1147133, at *2 (Del.Fam. Mar.1, 2004).

Anthony A. Figliola, Jr., Figliola & Facciolo, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice.

Marvin Burroughs appeals from a final judgment of conviction for Robbery First Degree, PFDCF [1], PDWPP [2], and Conspiracy Second Degree. Burroughs contends that on rebuttal summation the prosecutor (i) improperly vouched for police witnesses and (ii) improperly commented on Burroughs' constitutional right not to testify. Burroughs complains the trial judge erroneously denied his motion for a new trial necessitated by the allegedly prejudicial remarks. Because we find Burroughs unsuccessfully demonstrated deprivation of a substantial right or manifest injustice, we AFFIRM.

### Factual and Procedural Background[3]

On October 1, 2007, three men crossed the Market Street Bridge in Wilmington searching for someone to rob and intimidate. That someone was A.T.,[4] a 17–year-old McKean High School senior, on her way home from school. As A.T. crossed the Market Street Bridge, she noticed

---

1. Possession of a Firearm during the Commission of a Felony.

2. Possession of a Deadly Weapon by a Person Prohibited.

3. The summary of the facts are taken from the Superior Court's 2009 decision affirming Burroughs' conviction in this case. Additional pertinent facts are set forth in the Claims on Appeal and Discussion sections of this opinion, *infra*.

4. We refer to the victim as A.T. to protect her identity.

three men walking in the same direction but on the opposite side of the bridge. She turned onto 18th Street, only one block from her home, when she realized the three men were no longer on the opposite side of the bridge—they were behind her. The realization came too late—two of the three men, brandishing handguns, rushed A.T. and forced her into an alley.

A.T. recognized one of her attackers as Jaron Smullen, a fellow McKean High School student. A.T. later identified her other attacker as Marvin Burroughs. Burroughs ordered A.T. to hand over her money, remove her clothes, and lie on the ground. While she disrobed at gunpoint, Burroughs asked Smullen, "Should I do it, should I do her?" Smullen shook his head no. Burroughs then demanded that A.T. stand under a light so he could see her, threatening to kill her if she moved. After A.T. met each of these demands, Burroughs and Smullen took her cell phone and ran off. A.T. then left the alley, where a passerby assisted her and acquaintances drove her home.

The following day, Detective Hall of the Wilmington Police interviewed A.T. During the interview, Hall gave A.T. a copy of the McKean yearbook. A.T. turned to a photograph of the basketball team and identified Smullen as one of her assailants. After Smullen's arrest, he confessed to participating in a conspiracy to rob A.T. and identified his co-conspirators as Marvin Burroughs, his cousin, and Martel Washington, a childhood friend. After trial, a jury convicted Burroughs of Robbery First Degree, PFDCF, PDWPP, and Conspiracy Second Degree. Burroughs now appeals.

### Claims on Appeal

The substance of Burroughs' first assignment of error is that on two separate occasions, the prosecutor improperly vouched for the State's witnesses. Specifically, Burroughs contends that the prosecutor improperly vouched for the testimony of police witnesses about a photo lineup when the he stated that the jury would have to "discount the testimony of two trained police officers and instead accept the version of what happened . . . that was offered by Blanche and [A.T.]"

Burroughs also focuses on the prosecutor's characterization of defense counsel's closing argument to support the improper vouching claim. The prosecutor further remarked, "what [defense counsel] [is] telling you is that [the] [detectives] sat on that witness stand, took an oath to tell you the truth and didn't." Burroughs contends that the trial judge erred when he failed to redress the alleged prejudicial remarks by granting a new trial.

Secondly, Burroughs contends that the prosecution's suggestion that Burroughs could have presented an alibi defense if Jaron Smullen—a witness for the prosecution—was not telling the truth, improperly referred to his constitutional right not to testify during trial and improperly posited an inference of guilt.

The State submits that the prosecutor's remarks merely referred to the police witnesses' experience and expertise and as such cannot constitute vouching. Furthermore, the State contends that the prosecutor's statement about the defense's failure to present alibi witnesses did not implicate Burroughs' personal right to remain silent.

### Standard of Review

 Burroughs advances an abuse of discretion standard of review yet cites no precedent to support that standard. Generally, the grant or denial of a motion for a new trial *is* within the discretion of the trial court and may be overturned only

when a trial judge abuses his discretion.[5] We have held, however, that the failure of defense counsel to raise a contemporaneous objection to allegedly improper arguments constitutes a waiver of the right to raise the claim on appeal.[6] In those cases, we will not review the claim unless the defendant shows plain error.[7] Plain error exists when the defendant demonstrates deprivation of a substantial right or manifest injustice.[8]

## Discussion

### Improper Vouching Claim

■■■ Not every error that occurs during trial is grounds for reversal. " 'Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded' as harmless error."[9] Pursuant to this standard and upon review of the record, it does not appear that Burroughs' substantial rights were affected.

■■■ We provide attorneys with flexibility in closing arguments[10] that allows attorneys to move beyond the bounds of merely regurgitating evidence and allows attorneys to explain all legitimate inferences of innocence or guilt that flows from the evidence presented at trial.[11] Nevertheless, this flexibility is not without limitations. "Improper vouching occurs when the prosecutor implies some personal superior knowledge, beyond that logically inferred from the evidence at trial."[12] After reviewing the record, we conclude the prosecutor's remarks in Burroughs' case did not breach those limitations.

■■ During closing, defense counsel stated,

"We have two different stories. We have a *trained police officer* that says there's nothing suggestive. We have two people that say the entire photo line up was suggestive.... So, what does the State do, they call the other officer that was there." (emphasis added).

During rebuttal summation, the prosecutor asserted,

"Now, Mr. Figliola would have you just completely and utterly disregard the photo line-up because it suggested, and he began by, it would have you discount the testimony of two *trained police officers* and instead accept the version of what happened ... offered by Blanche and [A.T.]" (emphasis added).

The prosecutor further remarked,

"What he's telling you is that Detective Hall and Detective Nowell sat on that witness stand, took an oath to tell you the truth and didn't.... If you're going to come into a courtroom and perjure yourself, don't you finish the job?"

---

**5.** *Taylor v. State,* 685 A.2d 349, 350 (Del.1996) (citing *Styler v. State,* 417 A.2d 948, 953 (Del. 1980); *Boyd v. State,* 389 A.2d 1282, 1289 (Del.1978)).

**6.** *See Walker v. State,* 790 A.2d 1214, 1220 (Del.2002).

**7.** *Mason v. State,* 658 A.2d 994, 996 (Del. 1995) (citing *Robertson v. State,* 596 A.2d 1345, 1356 (Del.1991); *Ray v. State,* 587 A.2d 439 (Del.1991); *Weber v. State,* 547 A.2d 948, 960 (Del.1988); Supr. Ct. R. 8; *see also State v. Halko,* 56 Del. 480, 193 A.2d 817, 830 (1963)).

**8.** *See Goddard v. State,* 382 A.2d 238, 242 (Del.1977).

**9.** *Taylor,* 685 A.2d at 350.

**10.** *Johnson v. State,* 711 A.2d 18, 31 (Del. 1998).

**11.** *Hooks v. State,* 416 A.2d 189, 204 (Del. 1980).

**12.** *Id.*

When Burroughs' own counsel called the witnesses "trained police officers," he opened the door and invited the prosecutor to use the same language. Although defense counsel's introduction of the allegedly prejudicial terminology justifies the prosecution's response and tends to lessen any unfairly prejudicial effect the statements might have had alone,[13] we do not wish to elevate the *manner* in which the prosecutor introduced the alleged prejudicial remarks over the actual *meaning* of the remarks. Therefore, we now shift our focus to determine whether the substance of the prosecutor's remarks improperly influenced Burroughs' substantial rights.

We have found it appropriate to remedy improper vouching with a new trial when the prosecution implies that the jury must find that the State's witnesses committed perjury in order to acquit the defendant[14] or when the prosecution encourages the jury to disregard certain witnesses and buttress the credibility of others simply because of status.[15] The prosecutor in Burroughs' case neither implied the former nor encouraged the latter.

The prosecutor did not attempt to shift the evidentiary burden or enhance trustworthiness simply because the witnesses were police officers; rather, the prosecutor's remarks highlighted the issue in question—whether the photo identification process suggested the outcome to A.T.—and produced only one logical inference from the evidence. The prosecution demonstrated to the jury that the police officers failed to coax A.T. into identifying both the defendant *and* the co-defendant—therefore the photo lineup could not have suggested the outcome desired.

### Fifth Amendment Protection of Decision Not to Testify Claim

The Fifth Amendment prohibits negative inferences from a defendant's decision not to testify at trial.[16] "What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another."[17] The prosecutor may not comment on a defendant's exercise of the constitutional right against self-incrimination;[18] however, not every reference to the exercise of the Fifth Amendment privilege warrants reversal of a conviction.[19] We must determine whether the remarks were manifestly intended to be or were of such character that the jury would naturally and necessarily take them to be a comment on Burroughs' failure to testify.[20]

Defense counsel submitted during his closing,

> "Jaron Smullen knew what happened because he was there. He was one of the main perpetrators. He made himself a lookout and he substituted for his friends or for whoever, two gentlemen that he was directed to put in by his mother."

During rebuttal summation, the prosecutor asserted,

---

13. *See Mason v. State,* 658 A.2d at 998.

14. *Fensterer v. State,* 509 A.2d 1106, 1112 (Del.1986).

15. *Miller v. State,* 2000 WL 313484 (Del. 2000).

16. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Robertson v. State,* 596 A.2d 1345 (Del.1991).

17. *Griffin,* 380 U.S. at 615, 85 S.Ct. 1229.

18. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Shantz v. State,* 344 A.2d 245, 247 (Del.1975).

19. *Shantz,* 344 A.2d at 247.

20. *Flonnory v. State,* 893 A.2d 507, 542 (Del. 2006).

"If Jaron Smullen is going to lie about the involvement of the other two people, make up the names so he can get a deal, he's taking a heck of a risk if he names two people who aren't there, right? What if he says, well, one of the guys was Joe Blow and the only problem is Joe Blow is at work when it happened. No deal. What if he says it was Mary Smith except Mary Smith was in jail on October 1st of 2007. Aren't you taking a heck of a risk if you say these two guys were with me just after 9 o'clock on October 1, 2007, if he didn't know where they were?"

Burroughs submits that the clear implication of the remark is that he would have presented evidence that he was somewhere else, if in fact he was not at the crime scene. Burroughs contends that this implication impermissibly shifted the evidentiary burden and required him to produce an alibi defense or the jury would infer guilt from his failure to do so. We disagree with this interpretation.

The prosecutor said nothing that requested the jury to infer guilt from Burroughs' failure to testify. Examining the prosecutor's remark in the context of the trial as a whole, it becomes clear that the prosecutor did not impermissibly comment on Burroughs' right not to testify; on the contrary, the remark simply recognized and explained uncertainty regarding one aspect of defense counsel's closing argument—whether Smullen lied about the identities of his co-conspirators.[21]

The prosecutor's remark did not suggest that Burroughs would have presented alibi evidence if he had not been at the crime scene; rather, it suggested that Smullen or any person concerned about entering into a plea bargain with the State would not risk that deal by implicating someone who might establish that they were elsewhere at the time of the crime. The prosecutor's suggestion permissibly highlights the absence of evidence that would explain why Smullen would perjure himself or fabricate evidence in order to frame the defendants.

### Conclusion

Burroughs' failure to object at the time to the pretrial identification or to the prosecutor's remarks suggests that those remarks had little impact.[22] Given that the prosecutor's remarks were invited by and made in response to defense counsel's comments,[23] the overwhelming evidence against the defendant, the co-defendants' clear involvement and a participant's clear identification of his cohort, we find nothing so clearly unfairly prejudicial about the prosecutor's remarks that they impugned the fairness and integrity of the trial process. Therefore, we AFFIRM the judgment of the Superior Court.

---

21. *Flonnory v. State,* 893 A.2d at 539.

22. *See Styler v. State,* 417 A.2d at 950.

23. *Compare Brokenbrough v. State,* 522 A.2d 851, 858 (Del.1987) ("invited response" rule) *with Harris v. State,* 1987 WL 36987 (Del. Supr. Apr.6, 1987).