Leslie SMALL, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Nos. 369, 2011, 397, 2011.

Supreme Court of Delaware.

Submitted: Aug. 8, 2012.

Decided: Sept. 11, 2012.

Bernard J. O'Donnell, Nicole M. Walker (argued) and Santino Ceccotti, Office of the Public Defender, Wilmington, Delaware, for appellant.

Paul R. Wallace (argued) and Abby Adams, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

STEELE, Chief Justice:

Leslie D. Small appeals his convictions of two counts of First Degree Murder, three counts of Possession of a Deadly Weapon During the Commission of a Felony, First Degree Robbery, and Second Degree Burglary. The trial judge sentenced Small to death. Small makes two arguments on appeal. First, Small argues that the judge violated his Fifth Amendment right to remain silent by allowing testimony that Small refused to discuss the crime during his mental evaluation. Second, Small asserts that the prosecutor's characterization of mitigating circumstances as "excuses" jeopardized the fairness and integrity of the penalty hearing. Because we find the prosecutor's repeated characterization of mitigating evidence as excuses to be plain error, we reverse the imposition of a death sentence and remand for a new penalty hearing.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

June McCarson lived in the Donovan–Smith Trailer Park in Lewes, Delaware. Because she was 78 years old, she called the Comfort Ride cab company to drive her as she ran her errands. Comfort Ride dispatched Leslie Small to pick up McCarson at her mobile home.

After picking McCarson up at 12:25 p.m., Small drove to Wilmington Trust so McCarson could cash $500 of her Social Security check and deposit the rest. As McCarson counted the cash and put it in

her purse, Small noticed that she had several hundred-dollar bills. Next, Small drove McCarson to Bayside Beauty and then Happy Harry's. McCarson bought several bags of groceries and headed home.

At 3:35 p.m. Small pulled into McCarson's driveway and helped carry her bags into the mobile home. Before McCarson could take off her coat, Small pushed her to the floor and straddled her from behind, breaking her back in the process. He attempted to strangle McCarson with a towel but she struggled and yelled for him to leave her alone. Small then found scissors with three inch blades in a kitchen drawer and stabbed McCarson over twenty times in her back, neck, face, and hands.

Small collected the scissors, towel, and purse before leaving the scene. He inadvertently dropped the scissors near the driveway. After driving away, he disposed of the towel, the purse, and his bloody clothes, and later purchased cocaine with the money from McCarson's purse.

The next morning, two women from Meals on Wheels discovered June McCarson on the floor of her mobile home. Police determined that McCarson had used Comfort Ride and that Small was her driver. A neighbor reported seeing a cab in McCarson's driveway and a tall man inside the residence. After interviewing Small's wife, police concluded that Small killed McCarson and arrested him in Milford, Delaware. Small initially declined to speak but later confessed to the murder.

On April 5, 2011, a jury convicted Leslie Small on two counts of First Degree Murder, three counts of Possession of a Deadly Weapon During the Commission of a Felony, First Degree Robbery, and Second Degree Burglary.

---

1. Because the case is being remanded for a new penalty hearing, we do not address the issue of whether Small's death sentence was

disproportionate and arbitrary under 11 *Del. C.* § 4209(g)(2).

During the penalty phase, the State alleged four statutory aggravating circumstances: (1) Small was previously convicted of a felony, Robbery in the First Degree, and the underlying facts of the conviction involved the use or threat of force or violence upon another person; (2) Small committed the murder for pecuniary gain; (3) the victim was more than 62 years old; and (4) Small committed the murder while engaged in the commission of First Degree Robbery. The jury unanimously found, beyond a reasonable doubt, the existence of all statutory aggravators.

During the penalty phase opening statements, defense counsel introduced the concept of "excuse" by telling the jury that "[t]he evidence that we will be presenting is not an excuse for what happened. There is no excuse for what happened." [2] During his allocution, Small also mentioned the concept of "excuse" when he said, "HIV, I'm not using that for an excuse because there is no excuse for what I've done, now or in the past." [3] Nevertheless, *during the State's closing and rebuttal, the prosecutor compared Small's mitigating circumstances to "excuses" 8 times and to "shifting the blame" 3 times.*

The jury voted 12 to 0 in favor of the death penalty for the First Degree Intentional Murder and Felony Murder Counts. The trial judge found that all of the statutory aggravating factors had been established beyond a reasonable doubt.[4] The judge also found, by a preponderance of the evidence, that the aggravating factors outweighed the mitigating factors.[5] Therefore, the judge imposed a sentence of death by lethal injection.[6]

## II. STANDARD OF REVIEW

■■ We review errors which were not raised at the trial level for plain error. Under the *Wainwright v. State* plain error standard:

> [T]he error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.[7]

Defense counsel did not object to either of the issues raised on appeal. Therefore, we review for plain error.

## III. ANALYSIS

Small brings two issues on appeal: (1) the judge violated Small's Fifth Amendment right to remain silent by allowing the State's expert to testify that Small refused to discuss the crime during his mental evaluation; and, (2) the prosecutor's characterization of mitigating circumstances as "excuses" jeopardized the fairness and integrity of the penalty hearing.

A. **Testimony of Small's refusal to discuss the crime with the State's expert was harmless error given that Small's confession had already been admitted and the jury could not draw an adverse inference.**

In the penalty phase, the prosecutor presented State expert Dr. Mechanick's

2. App. to Answering Br. B–169.

3. *Id.* at B–212.

4. *State v. Small*, 2011 WL 2992038, at *5 (Del.Super. July 22, 2011).

5. *Id.* at *18.

6. *Id.* at *19.

7. *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

testimony to the jury. After discussing the expert's qualifications, the prosecutor engaged the following line of questioning: "Did you ask Mr. Small about the events of November 11, 2009?"[8] Dr. Mechanick answered, "Yes I did."[9] The prosecutor followed by asking, "And what did he tell you about those events?"[10] Dr. Mechanick said, "He refused to discuss those with me."[11] According to Small, testimony that he "refused" to discuss events on the day of the crime created an adverse inference that he was hiding damaging information while he was merely exercising his right to remain silent.

■ As a threshold matter, the State argues that the defense affirmatively waived appellate review by making a tactical decision not to object to this testimony at trial. We begin our analysis with Supreme Court Rule 8.[12] Because defense counsel did not object to Dr. Mechanick's testimony at trial, Rule 8 generally bars the defendant from raising the issue on appeal. This Court, however, has the power to take notice of plain error even when trial counsel does not object.[13] To constitute plain error, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[14] Because a violation of the Fifth Amendment right to remain silent-one of the accused's most important rights—would vitiate the fairness of the trial, we analyze this claim under the plain error standard of review.

In *Wright v. State,* we held that even under plain error review, "a conscious decision to refrain from objecting at trial as a tactical matter is a waiver that will negate plain error appellate review."[15] *Wright* involved the prosecution of a man for Rape and Sexual Abuse of a Child. The victim took the stand and read a portion of her journal into evidence, but changed the words to specifically accuse the defendant. For tactical reasons, defense counsel chose not to object to the victim's inaccurate reading of the excerpt and to argue that the testimony undermined the victim's credibility. On appeal, we held that the defendant's failure to object constituted a waiver that precluded plain error review, because the defense used the journal tactically to argue that the victim had a tendency to exaggerate.

■ *Wright* is distinguishable from this case. Unlike *Wright,* where defense counsel used the inaccurate journal excerpt to undermine the prosecutor's case, here the defense gained no tactical advantage by not objecting to testimony about Small's refusal to discuss the facts in the interview. In fact, the record reflects that the State raised the issue and the trial judge discussed it before Dr. Mechanick testified. At the beginning of penalty hearing day four, the prosecutor raised this specif-

---

8. App. to Opening Br. A148–49.

9. *Id.*

10. *Id.*

11. *Id.*

12. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

13. D.R.E. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.").

14. *Wainwright,* 504 A.2d at 1100 (citing *Dutton v. State,* 452 A.2d 127, 146 (Del.Super.1982)).

15. *Wright v. State,* 980 A.2d 1020, 1023 (Del. 2009).

ic issue with the trial judge, who recognized that Dr. Mechanick's testimony "might be taken as an adverse inference on [Small's] right to remain silent." [16] After identifying the issue, the judge notified counsel, "I mean it's something that hit me right when we started. Let's get through the case and then we will deal with this, just to get through to that point." [17] Immediately before Dr. Mechanick took the stand, the judge again discussed the issue with the attorneys and concluded: "I think it is important that [Small's refusal to discuss] be told, because it goes to the quality of the opinion of Dr. Mechanick, what he had available to him." [18]

Because the trial judge discussed the issue and ruled that the testimony should be allowed before Dr. Mechanick even took the stand, defense counsel had no reason to object. Because the record does not indicate that defense counsel strategically decided not to object, the issue has not been affirmatively waived. Therefore, we proceed to analyze this issue under the plain error standard of review.

■ Although the prosecutor's elicitation of Small's refusal to discuss may have been improper, any prejudice was harmless under the circumstances. Small argues that Dr. Mechanick's statement allowed the jury to draw an adverse inference from the exercise of his rights, which prevented him from receiving a fair penalty hearing. But, not every error that occurs during trial is grounds for reversal.[19] Before allowing Dr. Mechanick to make his statement regarding Small's refusal to talk, the trial judge had contemplated the risk of an adverse inference. The trial judge then concluded:

"this is part of a standard mental health type evaluation that was done. It is part of the evaluation history that is taken of the defendant." [20] The judge properly found that this testimony would be helpful, because it would allow the jury to assess the information available to the State's expert. Therefore, Dr. Mechanick took the stand, discussed his qualifications, and engaged in the following colloquy with the prosecutor:

Q: And just briefly, what materials did you review in conducting your evaluation of Mr. Small?

A: Let me just briefly pull out my notes. Basically I reviewed a lot of records, including police records related to the current charges; a lot of medical records. I had the opportunity to hear the audio-taped interview and the video-taped interviews by the police of Mr. Small. Let's see what else. A limited amount of education records. I had the opportunity to review Doctor Zingaro's report, Doctor Smithpeter's report as well, some prison correctional records, medical records from the prison, as well as non-medical records and Probation and Parole records.

Q: Did you review the report of Doctor William Thomas, a neurologist, on February 2, 2009, MRI?

A: Yes.

Q: Did you conduct an interview of Mr. Small?

A: I did.

Q: Did you ask Mr. Small about the events of November 11, 2009?

A: Yes, I did.

---

16. App. to Opening Br. A 143.

17. *Id.* at A144.

18. *Id.* at A147.

19. *Burroughs v. State,* 988 A.2d 445, 449 (Del. 2010).

20. App. to Opening Br. A 147.

Q: And what did he tell you about those events?

A: He refused to discuss those with me.

Q: All right. Did he indicate to you anything about his past drug history? [21]

Examining Dr. Mechanick's answer in the context of the full line of questioning, it becomes clear that the prosecutor did not impermissibly comment on Small's right to remain silent. By asking Dr. Mechanick whether Small had talked to him about the crime, the prosecutor properly presented to the jury on what information Dr. Mechanick based his evaluation, which went to the quality of his analysis and opinion. Small's contention that "[t]he only purpose for informing the jury that Small exercised his rights was for the jury to draw a negative inference" has no record support.[22]

Small also argues that the jury could incorrectly have inferred that he cooperated with his own doctor but not with the State's doctor in an effort to hide damaging information. Small had no damaging information to hide, however, because he had already confessed that he robbed and killed McCarson by strangling and stabbing her with scissors. The State introduced his confession. In other words, the jury could not draw any prejudicial adverse inferences because Small had confessed to the damaging details of McCarson's murder. Because we find no prejudice, admitting the expert's testimony constituted harmless error. This error should not occur at the next penalty hearing.

**B. The prosecutor's repeated mischaracterization of Small's mitigation evidence as excuses and efforts to shift the blame distorted the purpose of the penalty phase.**

 Small claims that the prosecutor repeatedly mischaracterized defense counsel's presentation of mitigating circumstances as an effort to excuse his conduct and shift the blame. In *Baker v. State*, we restated the standard of review for claims of prosecutorial misconduct. We held that "the first step in the plain error review of prosecutorial misconduct mirrors that in the review for harmless error: we examine the record *de novo* to determine whether prosecutorial misconduct occurred. If we determine that no misconduct occurred, our analysis ends." [23] If the record demonstrates misconduct, we apply the *Wainwright* standard.[24]

The record demonstrates that during closing statements and rebuttal, the State characterized Small's mitigating circumstances as excuses 8 times and as attempts to shift the blame 3 times.

- But when you stop and think about each and every one of those mitigators, what you will find is that they are *excuses*.[25]

- Then we come to what the State has described as *excuses:* HIV, borderline intelligence, drug use.[26]

- His next *excuse* is that he has an addiction to drugs.[27]

- The next *excuse* is that he has borderline intelligence.[28]

**21.** *Id.* at A148–49.

**22.** Opening Br. 13.

**23.** *Baker v. State*, 906 A.2d 139, 150 (Del. 2006).

**24.** *Id.* See p. 5, *infra*.

**25.** App. to Answering Br. B–200.

**26.** *Id.* at B–204.

**27.** *Id.* at B–205.

**28.** *Id.* at B–206.

- [Defense counsel] said, "no excuses." Call it whatever you want. It is an effort by the defendant to *shift the blame* to people other than himself. If they don't want to call that excuses, then don't call it excuses, but that's what it is, an effort to *shift the blame* to someone else.[29]

- Then we get to the *blaming,* the *excuses,* that Devereux pushed him out. You'll see from the Devereux records, he wasn't applying himself.[30]

- He's now looking back at his past and saying 'what can I pick out from my past that might be used as a reason for what I've done?' Setting aside the fact that he's a violent criminal. They .. are *excuses.*[31]

- Now, the defendant wishes to use those same events [seeing his house burn down and the riots in Newark] to *excuse* his behavior, and they don't.[32]

- In 2008, he used his physical condition to get an early release from jail without drug treatment. Now, he seeks to use these diseases to his own benefit again. Ladies and gentlemen, do not allow history to repeat itself on that point. He's used that as an *excuse* before, and he's using that as an *excuse* again.[33]

 The prosecutor's repeated and improper use of "excuses" as a refrain in the State's closing statement may have confused the jury about the purpose of the penalty hearing. We unambiguously hold

that mitigating circumstances are different from excuses. Black's Law Dictionary defines an excuse in the criminal law context as a "defense that arises because the defendant is not blameworthy for having acted in a way that would otherwise be criminal."[34] In Delaware, examples of excuses as affirmative defenses to criminal liability include duress,[35] insanity,[36] and involuntary intoxication.[37] These legal doctrines, which spring from the concept of excuse, are defenses that are limited to the guilt phase of the trial.

 On the other hand, a mitigating circumstance is "any factor which tends to make the defendant's conduct less serious or the imposition of a penalty of death inappropriate."[38] This broad definition includes any evidence which shows that the defendant, although guilty, should not receive the death penalty.[39] Mitigating circumstances, however, do not "excuse" the conduct of the defendant, because the defendant has already been found guilty in Delaware's bifurcated system.

Small's penalty phase was limited to determining whether Small should receive a life or death sentence. Small presented 17 mitigating circumstances in the penalty phase: (1) Small is remorseful, (2) Small is 53 years old, (3) Small has a strained relationship with parents, (4) Small saw his house burn down and the Newark, NJ race riots, (5) his parents placed Small in a residential treatment center, (6) Small has borderline intellectual functioning level, (7)

29. App. to Opening Br. A158.

30. *Id.* at A159.

31. *Id.* at A160.

32. *Id.* at A161.

33. *Id.* at A162.

34. *Black's Law Dictionary* (9th ed.2009).

35. 11 *Del. C.* § 431.

36. 11 *Del. C.* § 401.

37. 11 *Del. C.* § 423.

38. *Wright v. State,* 633 A.2d 329, 335 (Del. 1993).

39. *Id.* at 337.

Small's brother was killed in a robbery, (8) Small has not had a significant relationship with his siblings, (9) Small has strained relationship with his three children, (10) Small sought substance abuse treatment, (11) Small is married, (12) Small has been active in church, (13) Small was a consistent worker, (14) Small has HIV/AIDS and Hepatitis C, (15) Small has chronic substance abuse problems, (16) probation officers failed to adequately evaluate Small's need for substance abuse treatment, and (17) the murder was neither premeditated nor the result of substantial planning.[40] We read this evidence, offered as mitigating circumstances, such as borderline intellectual functioning and HIV, as reasons not to put Small to death, not as justifications or "excuses" for committing the murder.

■ The trial judge ultimately found Small's marriage, active membership in church, and good employment record to be mitigating factors.[41] This evidence had probative value that might convince a jury to recommend, and a judge to give Small, a life sentence. Characterizing the mitigating circumstances as excuses, however, distracts the jury from its proper role and duty to weigh the aggravating and mitigating circumstances. Therefore, the State improperly adopted a theme of referring to mitigating evidence as "excuses."

■ Having found the existence of prosecutorial misconduct in the record, we next determine whether the misconduct qualifies as plain error under the *Wainwright* standard.[42] To constitute plain er-ror, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[43]

In *Whalen v. State*, the defendant contended that the prosecutor's closing statements violated the right to a fair penalty hearing. We held that the prosecutor had "erred in discussing the mitigating factors the defense offered as insufficient 'to mitigate and *excuse.*'"[44] We reasoned in *Whalen*, that mitigating circumstances "are not offered to excuse the defendant's conduct and the prosecutor's comment was both misleading and inappropriate."[45] Despite finding the existence of prosecutorial misconduct, we held that the error did not materially prejudice the defendant "[g]iven the other substantial reversible errors" in the case.[46] Because the principal analysis in *Whalen* concerned only inadequate *voir dire* and general jury instructions on mitigating circumstances, the opinion did not find a single improper comment by the prosecutor to be prejudicial. Small can be distinguished because the cumulative effect of the prosecutor's remarks, 8 references to excuses and 3 references to shifting the blame, changed the tenor of the penalty phase and materially prejudiced the defendant.

We note a 2011 case, *Taylor v. State*, which is distinguishable. During the State's rebuttal closing argument, the prosecutor in *Taylor* told the jury "[t]he drug problem we recognize ... but it shouldn't serve as an excuse ... Doesn't

40. *State v. Small*, 2011 WL 2992038, at *2–3 (Del.Super. July 22, 2011).

41. *Id.* at *14.

42. *Wainwright*, 504 A.2d at 1100 (citing *Dutton*, 452 A.2d at 146).

43. *Id.*

44. *Whalen v. State*, 492 A.2d 552, 569 (Del. 1985) (emphasis original).

45. *Id.*

46. *Id.*

serve as an excuse for what he did." [47] In a motion for post conviction relief, the defendant framed defense counsel's failure to object to the prosecutor's statement as ineffective assistance of counsel under *Strickland.* [48] The trial judge held that the prosecutor's remarks could have drawn objections from defense counsel. [49] We affirmed but held that even if defense counsel had made the objections, they would not have changed the outcome of the penalty phase. [50] Here, because Small brings his claim of error on direct appeal and not as post conviction relief, we analyze the prosecutorial misconduct under the *Wainwright,* not the *Strickland,* standard. Here, although the repeated reference to mitigating circumstances as excuses may not have changed the outcome, they created doubt about the fairness and integrity of the penalty phase.

■■■ That prosecutors even today continue to use the term excuse in the penalty phase is surprising, given that we have consistently found that term improper. *Whalen* and *Taylor* held that describing mitigating evidence as "excuses" is misleading and inappropriate. But in those cases the prosecutor's comment did not, in light of the entire record, prejudice the defendant because the prosecutor used the term a single time. But here, by repeatedly characterizing mitigating circumstances as excuses, the State crossed the line and committed plain error.

■■■ The prosecutorial misconduct in this case jeopardized the fairness and integrity of the penalty hearing. Under 11 *Del. C.* § 4209(d), a judge must impose a death sentence if the judge finds, by a preponderance of the evidence, that the aggravating circumstances outweigh the mitigating circumstances. [51] The trial judge must give any jury recommendation about whether the aggravating circumstances outweigh the mitigating circumstances "such consideration as deemed appropriate by the [judge] in light of the particular circumstances or details of the commission of the offense and the character and propensities of the offender," but the jury's recommendation does not bind the trial judge. [52]

The prosecutorial misconduct tainted the jury's vote on whether the aggravating circumstances outweighed the mitigating circumstances. The trial judge twice noted the jury's unanimous vote in favor of the death penalty as a basis of support for the judge's finding that the aggravating circumstances outweighed the mitigating circumstances. [53] A penalty hearing conducted without the prosecutorial misconduct may have led to the jury's vote being split or in favor of life imprisonment. Although Delaware law would have permitted the trial judge to impose the death penalty even if the jury had voted differently, we cannot be confident that the trial judge would have done so. Therefore, the case should be remanded for a new penalty hearing.

## IV. CONCLUSION

The prosecutor's plainly erroneous use of the term "excuse" to characterize Small's offered mitigating circumstances

---

47. *Taylor v. State,* 32 A.3d 374, 386–87 (Del. 2011).

48. 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

49. *Taylor,* 32 A.3d at 387.

50. *Id.*

51. 11 *Del. C.* § 4209(d)(1).

52. *Id.*

53. *Small,* 2011 WL 2992038, at *18, *19.

fundamentally flawed the penalty phase. For the foregoing reasons, we reverse the imposition of a death sentence and remand for a new penalty hearing.