IN THE SUPREME COURT OF THE STATE OF DELAWARE

KEVIN RASIN, §
§ No. 510, 2017
Defendant-Below, §
Appellant, § Court Below: Superior Court
§ of the State of Delaware
v. §
§
STATE OF DELAWARE, § File No. N1009014476
§
Plaintiff-Below, §
Appellee. §

Submitted: May 9, 2018
Decided: May 23, 2018

Before **STRINE**, Chief Justice; **VAUGHN**, and **SEITZ**, Justices.

## **ORDER**

This 23rd day of May, 2018, having considered the briefs and the record below, it appears to the Court that:

(1)    Kevin Rasin appeals the Superior Court's denial of his motion for postconviction relief for ineffective assistance of counsel.  Rasin claims his counsel was ineffective for not objecting to what Rasin claims was the State's improper vouching for witnesses in its closing arguments.  After careful review, we find the Superior Court did not abuse its discretion by denying the motion for postconviction relief.  We affirm.

(2)   Rasin and several other individuals were members of a Wilmington gang known as the TrapStars.[1]   After escalating violence with another gang, the police identified Rasin as the gunman who shot and killed a rival gang member on May 3, 2010.  On September 17, 2010, the police arrested Rasin and indicted him on two counts of first degree murder, three counts of possession of a firearm during the commission of a felony, three counts of possession of a firearm by a person prohibited, gang participation, three counts of second degree conspiracy, and two counts of attempted murder.[2]

(3)   The trial began on February 13, 2012, with Rasin and a codefendant being tried jointly.  Six members or associates of the TrapStars pled guilty to related charges and testified for the State against Rasin.[3]   In their closing arguments, the co-defendants' counsel questioned the credibility of these witnesses.  In response, the State rebutted the defense arguments, explaining "in this case, the State would sub[mit] for each and every cooperating co-defendant who appeared before you there is ample corroboration of their statement."[4]   Rasin's counsel did not object to

---

[1] *Taylor v. State*, 76 A.3d 791, 795–96 (Del. 2013).

[2] Before trial, the State entered a *nolle prosequi* on one count of first degree murder, one count of possession of a firearm during the commission of a felony, and one count of second degree conspiracy.  During trial, the State entered a *nolle prosequi* on one count of possession of a firearm by a person prohibited.

[3] The six witnesses were Darnell Flowers, Jeroy Ellis, Robert Valentine, Terry Smith, Kevin Fayson, and Quincey Thomas.  App. to Opening Br. at 33–38 (Trial Tr., *State v. Rasin*, No. N1009014476, at 37, 49, 54, 83, 93 (Del. Super. Feb. 20, 2012)).

[4] *Id.* at 39 (Trial Tr., at 66–69).

the prosecutor's statements. The jury found Rasin guilty of first degree murder, possession of a firearm during the commission of a felony, two counts of second degree conspiracy, two counts of possession of a firearm by a person prohibited, gang participation, and attempted murder. This Court affirmed his conviction on September 25, 2013.[5]

(4) On October 18, 2014, Rasin filed a pro se motion for postconviction relief. Rasin claimed that his counsel was ineffective for not requesting a mistrial due to the potential bias of a juror whose brother had been murdered; and for failing to object to the State vouching for witnesses in its closing arguments.[6] The Superior Court denied Rasin's motion on November 17, 2017.[7] First, it found that the record showed that counsel had acted reasonably in its response to the potential juror bias, and even if it had not, Rasin failed to show that he suffered prejudice.[8] Second, it found that the State's statements did not amount to improper witness vouching, because they were made "for the purpose of responding to Defendant's counsel's attacks on the credibility of the State's witnesses" and were not just statements of

---

[5] *Taylor*, 76 A.3d 791.
[6] Rasin also raised claims of ineffective assistance of counsel in his original motion for failure to challenge: the court's admission of plea agreements, the statements of co-conspirators, and the court's ruling in regards to the unavailability of a co-defendant. The Superior Court found these claims mooted by *Phillips v. State*, 154 A.3d 1130 (Del. 2017) and thus did not consider them.
[7] Order, *Rasin*, No. 1009014476 (Del. Super. Nov. 14, 2017)).
[8] *Id.* at 8.

3

the State's personal beliefs and opinions.[9] Rasin appeals the Superior Court's decision as to the witness vouching issue.

(5) This Court reviews the denial of a Rule 61 motion for an abuse of discretion.[10] The Court must first "consider the procedural requirements of Rule 61 before addressing any substantive issues."[11] A motion for postconviction relief is barred by Rule 61(i)(1) if filed more than one year after final conviction; by Rule 61(i)(2) if not asserted in a prior postconviction motion; by Rule 61(i)(3) if procedurally defaulted; and by Rule 61(i)(4) if formerly adjudicated.[12] A claim not formerly raised or adjudicated may be reconsidered "in the interest of justice."[13] In addition, Rule 61(i)(5) provides an exception to the first three procedural bars if the movant shows "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[14] Rasin's motion does not trigger any of the procedural bars, and thus is not barred by Rule 61.

---

[9] *Id.* at 10.

[10] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013).

[11] *Bradley v. State*, 135 A.3d 748, 756–57 (Del. 2016).

[12] Super. Ct. Crim. R. 61(i)(1)–(4). We apply the version of Rule 61 in effect at the time the motion is filed. *Bradley*, 135 A.3d at 757. Rasin filed his motion for postconviction relief on October 18, 2014, at which time the June 4, 2014 version of Rule 61 was in effect.

[13] Super. Ct. Crim. R. 61(i)(2), (4).

[14] *Id.* 61(i)(5).

4

(6) To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's actions fell below an objective standard of reasonableness based on prevailing professional norms, and that he suffered prejudice because of it.[15] To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16]

(7) On appeal, Rasin argues the Superior Court abused its discretion by not finding his counsel ineffective for failing to object to the State vouching for its witnesses.[17] The Superior Court found that the statements alleged to be vouching were simply proper responses to the defendants' attacks on the State's witnesses' credibility. Rasin contends that the State's comments were impermissible because they "were in no way invited by defense counsel in its closing."[18] According to Rasin, "the Prosecutor in rebuttal went beyond neutralization and vouched for State witnesses."[19] In response, the State argues that its comments were based on evidence presented at trial and were in direct rebuttal to the defense's statements attacking the witnesses' credibility.

---

[15] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[16] *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*
[17] Opening Br. at 6.
[18] *Id.*
[19] Reply Br. at 4.

(8)     The State may not vouch, positively or negatively, as to the credibility of another witness and his truthfulness.[20] "Improper vouching occurs when the prosecutor implies some personal superior knowledge, beyond that logically inferred from the evidence at trial, that the witness testified truthfully."[21] Witness vouching includes statements that "directly or indirectly provide[] an opinion on the veracity of a particular witness."[22] Witness vouching is "a special concern because jurors may easily interpret vouching by the prosecutor as an official endorsement of the witness," given their position of authority and implied superior knowledge, "and in doing so, overlook important aspects of the witness' credibility."[23] The prosecutor has the responsibility to "ensure that guilt is decided only on the basis of sufficient evidence," without the undue influence of "improper suggestions, insinuations, and assertions of personal knowledge." [24]

(9)     The State does have "flexibility in closing arguments that allows attorneys to move beyond the bounds of merely regurgitating evidence and allows attorneys to explain all legitimate inferences of innocence or guilt that flow[] from the evidence presented at trial."[25] The State's remarks "must ultimately be judged

---

[20] *Green v. State*, 147 A.3d 748, 2016 WL 4699156, at *3 (Del. Sept. 7, 2016) (TABLE).
[21] *Whittle v. State*, 77 A.3d 239, 243 (Del. 2013) (quoting *White v. State*, 816 A.2d 776, 779 (Del. 2003)).
[22] *Baker v. State*, 906 A.2d 139, 149 (Del. 2006).
[23] *Miller v. State*, 750 A.2d 530, 2000 WL 313484, at *5 (Del. Feb. 16, 2000) (TABLE).
[24] *Kirkley v. State*, 41 A.3d 372, 377 (Del. 2012).
[25] *Burroughs v. State*, 988 A.2d 445, 449 (Del. 2010).

on whether they and other comments, in the whole context of the case, prejudiced defendants' right to a fair trial."[26]   Here, the prosecutor's remarks, when read in context, were based on inferences that were drawn from the evidence at trial and showed the witnesses' motivations to testify truthfully.  The remarks were not based on the prosecutors personal beliefs or opinions.

(10)   Rasin argues that "[d]efense [c]ounsel at no time during his closing argument accuse any of the State witnesses . . . as being less than truthful in their testimony."[27]   He explains that "by constantly implying the witnesses were not lying" the prosecutor was "imputing her personal belief."[28]  This argument, however, is contradicted by the record.  Defense counsel stated:

- "[H]ow trustworthy is somebody that's been smoking PCP going to be . . . ?"[29]
- "Is [Fayson] a practiced liar?"[30]
- "How do you know Kevin Fayson is not [a] perjurer . . . and everything he told you was a lie?"[31]
- "[Ortiz] tells you that Fayson, essentially, is a bald-faced liar.  He makes things up."[32]
- "Fellows that are trying to help themselves with the police . . . have an agenda."[33]

---

[26] *Hooks v. State*, 416 A.2d 189, 205 (Del. 1980).
[27] Opening Br. at 4.
[28] *Id.* at 7.
[29] App. to Opening Br. at 44 (Trial Tr., *Rasin*, No. N1009014476, at 33 (Del. Super. Mar. 14, 2012)).
[30] *Id.* at 45 (Trial Tr., at 36).
[31] *Id.* at 47 (Trial Tr., at 42).
[32] *Id.* (Trial Tr., at 45).
[33] *Id.* at 48 (Trial Tr., at 46).

7

- "The State describes alleged confessions, sort of braggadocios, made up by Kevin Rasin after the shooting.  How credible are those things?"[34]
- "How come two years later [Whye is] coming up with a different description?"[35]
- "[L]ook at these witnesses and decide are they accurate, are they dependable, are they reliable, or are they trustworthy?"[36]
- "I want you to consider your impression and your judgment of these people when you evaluate."[37]
- "[D]o you think Robert Valentine is so tied to the truth that he's not going to change his testimony in return for that sweet deal?"[38]
- "[W]ith that motive to tell a different story, can you believe him?  Can you rely on his testimony?  On cross-examination he said, 'ninety-five percent of what I said is true. . . .' Well, where's he lying?"[39]

In its rebuttal, the State responded:

- "[F]or each and every cooperating co-defendant who appeared before you there is ample corroboration of their statement."[40]
- "Why point to the one guy who could point back at you?  Because that guy's the one who [] shot Darnell Whye."[41]
- "[M]ost people you've heard from . . . don't want to be here.  They don't want to talk to the police.  They don't want to call 911.  But that doesn't mean they're lying."[42]
- "Why would Robert Valentine tell on his friend?  Marc Taylor out of that whole crew?  Marc Taylor was the one he was close with."[43]

---

[34] *Id.* (Trial Tr., at 47–48).
[35] App. to Answering Br. at 6 (Trial. Tr., at 66).
[36] *Id.*
[37] *Id.*
[38] *Id.* at 10 (Trial Tr., at 84).
[39] *Id.* at 11 (Trial Tr., at 86).
[40] App. to Opening Br. at 39 (Trial Tr., at 66–69).
[41] *Id.* at 51 (Trial Tr., at 108).
[42] *Id.* (Trial Tr., at 106–07).
[43] *Id.* at 53 (Trial Tr., at 108).

- "If [JR is] lying, why not lie about one of them?  Why point to him, his best friend?"[44]
- "Why would Maria Calva lie?  Is she in cahoots with Fayson just like everybody else, as they claim?  No.  There's no evidence of that."[45]
- "Kevin Fayson could have just put it all on Rasin. . . . If this is a conspiracy to get Kevin Rasin, why not say that?  Why not put it all on him, starting with [the] attempted murders in Browntown, if Fayson is such a liar?"[46]

(11)   "[T]he prosecution may fairly attempt to neutralize strident defense arguments in the same manner as they were made."[47]  The State's comments directly rebut the defendant's assertions that the witnesses were lying and had an agenda. The State did not "imply personal knowledge of the truth of a witness's statement,"[48] but rather, made arguments based on inferences that could be drawn from the evidence presented at trial.  Thus, the statements did not amount to witness vouching.

(12)   Rasin relies on *Whittle v. State*, in which the prosecutor improperly vouched for the witnesses' credibility by stating that "they were 'right' or 'correct' at least 20 times."[49]  This Court noted that statements like "she was *absolutely right*"

---

[44] *Id.*
[45] *Id.* at 55 (Trial Tr., at 119).
[46] *Id.* at 56 (Trial Tr., at 122); *see also* Opening Br. at 4–5.
[47] *Hooks*, 416 A.2d at 205.
[48] *State v. St. Louis*, 2004 WL 2153645, at *6 (Del. Super. Sept. 22, 2004), *aff'd*, 869 A.2d 328 (Del. 2005); *cf. Saunders v. State*, 602 A.2d 623, 624 (Del. 1984), *on reargument*, 567 A.2d 423 (Del. 1989) (finding improper witness vouching when the prosecutor stated, "[the witness] told something that was subsequently verified by other people" because it implied personal knowledge).
[49] 77 A.3d at 241.

9

and "what [she] told you is *exactly right*," are the sort of impermissible statements based on personal knowledge and opinion prosecutors cannot share.[50]  In addition, Rasin points out that in *Whittle*, the Court "cautioned against the use of the word 'lie' by prosecutors to describe witness testimony," due to the risk that, much like a prosecutor asserting an opinion of truth, there is the risk that the jury will be misled from making inferences drawn on the evidence.[51]  The *Whittle* case is distinguishable.  While the State used the word lie in the instant case, it was in response to the defense's assertions that the witnesses were lying.  The State merely asked the jury to consider why would the witnesses would lie in light of the evidence presented.  Unlike *Whittle*, the State's comments were not based "entirely on the impermissible inferences that the prosecutor himself had created,"[52] but were based on inferences logically drawn from the evidence.

(13)    In a similar case, *State v. Black*, the defendant challenged statements made by the State as improper witness vouching.[53]  The Superior Court rejected the arguments, explaining that "a prosecutor is permitted to argue any inferences which could be made from the evidence presented at trial."[54]  The court found that the

---

[50] *Id.* at 245.
[51] *Id.* at 246.
[52] *Id.* at 248.
[53] 2010 WL 5313451, at *10 (Del. Super. Nov. 30, 2010).
[54] *Id.* at *9.

prosecutor's statements could be "logically deduced from testimony by witnesses at trial," and "[i]n no way did the prosecutor imply that she possessed knowledge outside the evidence presented at trial."[55] The prosecutor was allowed to address the credibility of the witness by "asking the jury to make a logical inference" and "arguing why the [witness] should be believed."[56] Here, the State did not make any statements suggesting personal knowledge of the witnesses' credibility, but simply provided facts from the record showing why the witnesses should be believed.

(14) The State did not improperly vouch for its witnesses, and thus there were no grounds for Rasin's counsel to object. The Superior Court did not abuse its discretion by finding that Rasin's counsel was not ineffective.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[55] *Id.*
[56] *Id.* at *10.