IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MALCOLM LUM, | § | |
| | § | No. 424, 2017 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID. No. 1611005481 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | |

Submitted: August 22, 2018
Decided: August 22, 2018

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

### **O R D E R**

On November 8, 2016, Probation Officer Joseph Scioli and Wilmington Police Detective Matthew Rosaio, his Operation Safe Streets partner,[1] were patrolling Wilmington's Center City area when they observed Malcolm Lum and Dale Lolly walking in a circuitous route, seeming to avoid their patrol car with a "nervous demeanor" and "constantly checking [the car's] whereabouts," saw Lum exhibit the "canting" behavior of an armed gunman by appearing to secure a gun in

---

[1] Operation Safe Streets is a "crime reduction initiative that teams police with state probation and parole officers" to "conduct unannounced curfew checks on probationers, surveil high crime areas, initiate investigations of probation violators and their associates, and follow-up on tips provided by informants." OPERATION SAFE STREETS/GOVERNOR'S TASK FORCE, ANNUAL REPORT 1 (2006), https://cjc.delaware.gov/wp-content/uploads/sites/61/2017/06/05_OSS_GTF_Annual_Report-min.pdf.

his waistband,[2] and exited their patrol car to detain and search the two men.[3] While Detective Rosaio detained Lolly, Probation Officer Scioli detained Lum. Scioli then conducted a pat-down search of Lum and found a loaded 10-millimeter handgun in his waistband.[4] The officers confirmed through DELJIS that Lum had previously been convicted of first degree Attempted Robbery, making him a person prohibited from possessing firearms or ammunition, and processed Lum's arrest.[5]

At his later trial, Lum was convicted of Carrying a Concealed Deadly Weapon, Possession of a Firearm By A Person Prohibited, and Possession of Ammunition By A Person Prohibited. On appeal, he makes no argument that he was unjustly convicted in the sense of being innocent of those crimes. Rather, his only argument is that the weapon seized from him should have been suppressed as evidence. Only one of Lum's arguments in support of that contention was properly raised below. That issue involves whether the officers had a reasonable articulable suspicion to justify stopping him. But evidence in the record, including the fact that Lum was acting suspiciously in a high crime area and appeared to be armed and avoiding the officers' patrol car, supports the Superior Court's finding that the

---

[2] "Canting" behavior, according to the arresting officer, is "when a subject either instinctively or nervously . . . adjust[s] [a] firearm in the[ir] waistband, [and] the[ir] arm goe[s] up and hold[s] [it] tight against the body. . . . It's almost like a 90-degree motion you make with your arm." Suppression Hearing Tr. (June 30, 2017) at 26:4–10. The officer also said that, through his training and experience, he believed this movement to be a "weapons check." *Id.* at 11:20–12:2.
[3] Preliminary Hearing Tr. (Nov. 18, 2016), at 4:13-15, 5:6–10, 9:3–10.
[4] *Id.* at 10:1–3.
[5] Detective Rosaio's Affidavit (Nov. 8, 2016), at 4.

officers had a reasonable suspicion to stop Lum. On appeal, Lum has surfaced two additional arguments that he did not present below. These cannot be the basis for reversal unless they involve plain error.[6] Plain error is just that, an error so obvious and fundamental that it would be unjust not to take into account on appeal.[7] Neither of Lum's arguments rise to that level.

First, Lum argues that, because Lolly was also searched even though he did not exhibit "canting" behavior, this means the police would have searched Lum even absent the evidence in the record of him canting. This is not plain error of any kind. Testimony in the record supports the finding that Lum engaged in canting indicative of firearms possession.[8] The fact that someone else did not does not support an argument that Lum's arrest was unjust. As important, Lum and his companion were

---

[6] Sup. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Small v. State*, 51 A.3d 452, 456 (Del. 2012) ("We review errors which were not raised at the trial level for plain error.").

[7] *See Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) ("[T]he doctrine of plain error is limited to material defects *which are apparent on the face of the record*; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.") (emphasis added); *McGonigle v. State*, 568 A.2d 1072 (Del. 1989) (This Court "will not disturb findings of fact by a trial judge or by a jury, if they are supported by competent evidence in the record, especially if they relate to the credibility of a witness").

[8] Suppression Hearing Tr. (June 30, 2017) at 11:20–23; 12:1–2 (when the officers circled a block to observe Lum and Lolly from their patrol car, they saw Lum do "a stutter step, kind of stop[] in his tracks," and exhibit canting behavior by raising his right arm to the right portion of his body and "doing what [Detective Rosaio said he] kn[e]w through [his] training and experience to be a weapons check"); *Id.* at 13:1–6 (when the officers exited the vehicle to stop the two men, they saw Lum with his "right arm pinned against his side while his left hand [wa]s flowing more naturally with his gait, again, showing what [Detective Rosaio said he] kn[e]w through [his] training and experience to be a characteristic of an armed gunman").

3

traveling together, and the officers may have reasonably deemed it unsafe to themselves not to stop both Lum and Lolly, when there was a rational basis to assume that if one of them was armed, so was the other. Suffice it to say that Lum did not raise this argument below, and thus the State was unable to provide any of the many plausible answers to the question of why Lolly was stopped despite the fact that he did not exhibit canting behavior. Most importantly, no obvious error of any kind was made by the Superior Court in failing to raise this issue itself.

Lum's second new argument on appeal is that he was not a probationer under Scioli's supervision and that, as a probation officer and not a police officer, Scioli was not legally authorized to seize him. But, again, we fail to perceive plain error. Lum makes this argument in a cursory section of his brief. And Lum slights language in Title 11, § 4321 of the Delaware Criminal Code that probation officers "shall exercise the same powers as constables under the laws of this State . . . while in the performance of the lawful duties of their employment,"[9] and the fact that § 2705 of that Code affords constables with the same powers as police officers,[10] and specifically acknowledges that constables may make "a custodial detention," "an arrest," and a "search of a person or place."[11] Lum makes no argument that

---

[9] 11 *Del. C.* § 4321(d).

[10] *Id.* § 2705(2) ("The constable shall . . . [e]xercise the same powers as peace officers and law-enforcement officers, in order to protect life and property, while in the performance of the lawful duties of the employment."); *Id.* § 222(15) (defining law-enforcement officer to include police officers).

[11] *Id.* § 2705(3).

4

Probation Officer Scioli, who was patrolling Wilmington's Center City neighborhood as a part of Operation Safe Streets, was not performing the lawful duties of his employment at the time he, acting in concert and under supervision by a detective from the Wilmington Police, acted to secure Lum while Detective Rosaio secured Lolly. It was not plain error for the Superior Court to itself fail to question Lum's authority to act in circumstances that are hardly novel, given the long-standing nature of the Operation Safe Streets program.[12]

Furthermore, we perceive no fundamental injustice in Lum facing prosecution for a crime of which he was indisputably guilty as a substantive matter based on his untimely raised statutory argument. There is a reason that issues are supposed to be raised at the correct time, so that a full record can be properly made. We decline to pronounce on an issue of statutory law that was not properly raised when no fundamental injustice was done, and when there is no way to find that the trial judge committed plain error here without ignoring the very nature of what the word "plain" means.

---

[12] OPERATION SAFE STREETS/GOVERNOR'S TASK FORCE, ANNUAL REPORT 1 (2006), https://cjc.delaware.gov/wp-content/uploads/sites/61/2017/06/05_OSS_GTF_Annual_Report-min.pdf ("Operation Safe Streets (OSS) was originally conceived as a strategy to halt the increase in firearm related violence in Wilmington that occurred in 1996.").

5

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court dated June 30, 2017 is hereby AFFIRMED.

BY THE COURT:

/s/ Leo E. Strine, Jr.

Chief Justice