IN THE SUPREME COURT OF THE STATE OF DELAWARE

TURHAN BLENMAN, §
§ No. 524, 2015
Defendant Below- §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 1406008686
STATE OF DELAWARE, §
§
Plaintiff Below- §
Appellee. §

Submitted: January 22, 2016
Decided: March 8, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

**O R D E R**

This 8th day of March 2016, upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record below, it appears to the Court that:

(1) On June 16, 2015, after a one day bench trial, the Superior Court found the appellant, Turhan Blenman, guilty of two counts of a Possession of a Firearm by a Person Prohibited ("PFBPP"). Blenman was sentenced to six years of Level V incarceration, followed by one year of Level III probation. This is Blenman's direct appeal.

(2) On appeal, Blenman's counsel ("Counsel") filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a

complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Blenman of the provisions of Rule 26(c) and provided Blenman with a copy of the motion to withdraw and the accompanying brief. Counsel also informed Blenman of his right to identify any points he wished this Court to consider on appeal. Blenman has raised multiple issues for this Court's consideration. The State has responded to the issues raised by Blenman and moved to affirm the Superior Court's judgment.

(3) When reviewing a motion to withdraw and an accompanying brief, this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[1]

(4) The basic facts from the trial record that explain the evidence presented at trial provide context for an examination of Blenman's many claims of potential error. One key body of evidence involved testimony regarding the search during which weapons were found at Blenman's house. The trial transcript in this case reflects that, on June 11, 2014, the Dover Police Department executed a search warrant for a house at 28 Vera Way in Dover, Delaware. When the police

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

entered the house, a small child, the child's mother, and Blenman's mother were present. Steven Huey and Chrissy Guzman, who was Blenman's girlfriend, arrived while the police were searching the house.

(5) The first floor of the house contained a living room, kitchen, bedroom, and bathroom. Corporal Aaron Dickinson testified that he found multiple pieces of mail bearing Blenman's name and a different address in the first floor bedroom. Corporal Dickinson also found a business card with Blenman's name. Corporal Dickinson did not recall if he saw mail bearing a name other than Blenman's name.

(6) Corporal Dickinson testified that he looked in a closet located in the first floor bedroom, but did not search it. Corporal Dickinson did not recall if he saw women's clothing or a purse in the first floor bedroom. An inventory of the items seized during the search reflected that a purse was found in the first floor bedroom. Corporal Dickinson was also on the second floor of the house, but only recalled searching a closet where he found a postage box addressed to Blenman at 28 Vera Way. According to Detective Anthony DiGirolomo, there was a small bedroom on the second floor with a small bed and a child's belongings and another room that was basically empty.

(7) Detective Christopher Bumgarner testified that when he looked in the closet in the first floor bedroom he saw a rifle barrel sticking out of a blanket. Two rifles were wrapped in the blanket. Detective Bumgarner testified that the closet

3

contained men's clothing and that he did not recall seeing any women's clothing in the closet or house. Detective DiGirolomo indicated that most of the clothing in the first floor bedroom belonged to a man, but there were possibly a few items of women's clothing. He did not see any female toiletries in the bathroom off of the first floor bedroom. No ammunition was found in the house.

(8) The other key evidence against Blenman was his own recorded statement. Detective DiGirolomo testified at trial that Blenman eventually arrived at the house during the search and was taken into custody. After receiving *Miranda* warnings, Blenman chose to speak to Detective DiGirolomo. The interview was played at trial. During the interview, Blenman stated that he and his son were the only people who lived at 28 Vera Way. Blenman further stated that he had paid cash for the rifles and that the rifles had not been used in any crimes.

(9) The defense did not call any witnesses at trial. The parties stipulated that Blenman was a person prohibited from owning or possessing firearms. The Superior Court found that Blenman was guilty of PFBPP. This appeal followed.

(10) Blenman's arguments on appeal may be summarized as follows: (i) the State violated *Brady v. Maryland*[2] and Superior Court Criminal Rule 16 by failing to collect the blanket wrapped around the rifles, take photographs of the first floor bedroom closet where the rifles were discovered, and collect the clothes

---

[2] 373 U.S. 83 (1963).

in the closet; (ii) he was denied his right to challenge the search warrant; (iii) he was denied his right to a speedy trial; (iv) he was not given the opportunity to examine the evidence offered by the State at trial; (v) the State failed to provide him with exculpatory evidence in a timely manner; (vi) he was denied his right to present exculpatory evidence; (vii) there was insufficient evidence to support his convictions; and (viii) ineffective assistance of counsel.

(11) Blenman did not raise his *Brady* or Rule 16 violation claims in the Superior Court so we review those claims for plain error.[3] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[4] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[5]

(12) A *Brady* violation occurs when a prosecutor fails to disclose favorable evidence that is material to either the guilt or punishment of the defendant.[6] Under Rule 16, the State must, upon the request of the defendant, make available for inspection or copying "books, papers, documents, photographs, tangible objects,

---

[3] Supr. Ct. R. 8; *Small v. State*, 51 A.3d 452, 456 (Del. 2012).
[4] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[5] *Id.*
[6] 373 U.S. at 87.

5

buildings or places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant."[7]  Blenman speculates that, if collected or taken, the blanket containing the rifles, the clothes in the closet, and photographs of the closet would tie a different person to the rifles.

(13)  Blenman cannot meet "the standard for materiality by merely positing the existence of evidence and speculating about its nature."[8]  Blenman's reliance upon *Johnson v. State*[9] is also misplaced.  In that case, we held that the Superior Court erred in denying the defendant's request for a jury instruction under *Lolly v. State*,[10] because the police failed to collect clothes hiding a handgun found in a car and a shotgun found in a bedroom where there was evidence that another person owned the car, that same person shared the bedroom with the defendant, and there were photographs of that person holding a shotgun.[11]  In this case, however, Blenman told the police that only he and his child lived at 28 Vera Way, he purchased the rifles with cash, and the rifles had not been used in connection with any crimes.  Other than testimony that there was a purse and the possibility of

---

[7] Super. Ct. R. 16(a)(1)(C).

[8] *Saunders v. State*, 1989 WL 136937, at *6 (Del. Sept. 29, 1989).

[9] 27 A.3d 541 (Del. 2011).

[10] 611 A.2d 956, 961 (Del. 1992) (providing that when State fails to preserve evidence that may be material to defendant's guilt or innocence, remedy is instruction requiring jury to infer that missing evidence would have been exculpatory).

[11] *Johnson*, 27 A.3d at 544-49.

6

women's clothing in the first floor bedroom, no evidence was offered at trial that could suggest in even a remote possibility that someone other than Blenman possessed the rifles. Blenman advanced no plausible theory then.

(14) Rather, for the first time on appeal, in his Rule 26(c) submissions, Blenman includes a May 13, 2015 affidavit from someone named German Pizarro. In that affidavit, Pizarro claims that he was storing the rifles at Blenman's house, Pizarro told Blenman he was going to retrieve the rifles, Blenman thought Pizarro had retrieved the rifles, and, to the best of Pizarro's knowledge, Blenman never touched or controlled the rifles. Pizarro's affidavit is contrary to Blenman's recorded statement to the police, in which Blenman unambiguously stated that he bought the rifles. To the extent that Blenman argues that he told his counsel about Pizzaro, and that Pizzaro was willing to testify at trial to the version of events set forth in his affidavit, and that Counsel nonetheless refused to call Pizzaro as a witness despite Blenman's encouragement that he be called, Blenman is making an ineffective assistance of counsel argument, not one based on any error of the trial court. Although under Pizarro's version of events, Blenman would have been guilty of constructive possession in any event, for present purposes, what is important is that claims of ineffective assistance of counsel cannot be pressed on

7

direct appeal.[12] Based on the record before the trial court, there is no plain error here.

(15) Blenman next claims he was denied his right to challenge the search warrant and have a suppression hearing. The Superior Court docket reflects that Blenman filed a *pro se* motion to suppress. Counsel, however, did not file a motion to suppress. Under Superior Court Criminal Rule 47, the Superior Court "will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense."[13] Blenman was not granted permission to participate with counsel in the defense and the Superior Court was not required to consider his *pro se* motion to suppress. This claim is therefore without merit. To the extent Blenman challenges Counsel's failure to file a motion to suppress, this Court does not consider ineffective assistance of counsel claims for the first time on direct appeal.[14]

(16) Blenman did not assert that his right to a speedy trial was violated in the Superior Court so we review that claim for plain error.[15] In determining whether a defendant has been deprived of his right to a speedy trial, the Court considers four factors: (i) the length of the delay; (ii) the reason for the delay; (iii)

---

[12] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).
[13] Super. Ct. Crim. R. 47.
[14] *See supra* n.12.
[15] *See supra* n.3.

the defendant's assertion of the right to a speedy trial; and (iv) prejudice to the defendant.[16] Unless the delay is lengthy enough to be presumptively prejudicial, there is no need to inquire into the remaining factors.[17]

(17) The Superior Court docket reflects that there was a year and five days between Blenman's arrest and trial. Assuming this delay was presumptively prejudicial,[18] the other factors do not weight in Blenman's favor. There were five continuances, four at the request of Blenman's own Counsel. In other words, Blenman himself is charged with most of the delay and that undercuts his current argument. Consistent with this reality, Blenman did not assert his right to a speedy trial in the Superior Court. Finally, Blenman does not identify any prejudice he suffered as a result of the continuances. There is no plain error here.

(18) Blenman next claims that, with the exception of his statement to the police, he was not given the opportunity to examine the evidence offered by the State at trial (five pieces of mail with his name and the rifles). This claim was not

---

[16] *Hicks v. State*, 2011 WL 2937393, *2 (Del. July 21, 2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[17] *Id.* (citing *Middlebrook v. State*, 802 A.2d 268, 273–74 (Del. 2002)).

[18] *See, e.g.*, *Cooper v. State*, 2011 WL 6039613, at *7 (Del. Dec. 5, 2011) (concluding that delay of one year and six weeks between arrest and trial required full *Barker* analysis); *Dabney v. State*, 953 A.2d 159, 164 (Del. 2008) (holding that delay of one year and one week between arrest and trial required consideration of other *Barker* factors). *But see Hicks v. State*, 2011 WL 2937393, at *2 (Del. July 21, 2011) (concluding that one year and almost two weeks between arrest and trial where there were two continuances granted for good cause was not presumptively prejudicial).

raised in the Superior Court so we review for plain error.[19] The record reflects that the State provided Rule 16 discovery responses to Counsel and directed Counsel to contact the State about inspecting any documents or tangible objects seized by the police. Blenman does not claim that he told Counsel or the trial court below that there was any plausible reason a personal inspection by him of this evidence would have yielded evidence useful to the defense. Consistent with this failure below, Blenman does not explain how he was prejudiced by not having the opportunity personally to examine the mail or rifles. Blenman has not demonstrated any error at all, much less plain error.

(19) Blenman next contends that the State failed to produce exculpatory evidence to him in a timely manner because he was not permitted to review a copy of the inventory for all of the items seized under the search warrant until the day before trial. This claim was not raised in the Superior Court so we review for plain error.[20] Even now, Blenman does not explain how the inventory was exculpatory or how he was prejudiced by not being able to review it until the day before trial. The trial transcript reflects that Counsel asked DiGirolomo about the inventory listing a purse that was seized from the first floor bedroom. We discern no error, much less plain error.

---

[19] *See supra* n.3.
[20] *See supra* n.3.

(20) Blenman next argues that he was denied his right to present exculpatory evidence because he was not able to bring forth witnesses in a timely manner. Blenman does not explain how he was prevented from calling or subpoenaing witnesses to testify in his defense. To the extent Blenman is contending that Counsel should have called or subpoenaed witnesses, we do not review ineffective assistance of counsel claims for the first time on direct appeal.[21]

(21) In support of his argument that there was insufficient evidence to justify his convictions, Blenman argues that no photographs were taken of the closet where the rifles were found, there was no DNA or fingerprint evidence, his statement to the police was not a confession, the police officers offered contradictory testimony and did not remember many details of the June 11, 2014 search, and the police failed to interview the other people in the house at the time of the search.

(22) In reviewing whether there was sufficient evidence supporting Blenman's convictions, the Court must determine whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[22] A conviction for PFBPP requires proof that the defendant is a prohibited person and that he knowingly "possesses,

---

[21] *See supra* n.12.
[22] *Williamson v. State*, 113 A.3d 155, 158 (Del. 2015).

11

purchases, owns or controls a deadly weapon or ammunition for a firearm."[23]  The

parties stipulated that Blenman was a prohibited person.  As to possession,

sufficient evidence of constructive possession will support a PFBPP conviction.[24]

To prove constructive possession of a gun, the State must show that the defendant:

(i) knew the location of the gun; (ii) had the ability to exercise dominion and

control over the gun; and (iii) intended to exercise dominion and control over the

gun.[25]  Circumstantial evidence may prove constructive possession.[26]  Establishing

PFBPP does not require evidence that the weapon was physically available and

accessible to the defendant at the time of arrest.[27]

(23)  Viewing the evidence in the light most favorable to the State, a

rational trier of fact could find Blenman guilty of PFBPP beyond a reasonable

doubt.  The trial record reflects that the rifles were found in a closet full of men's

clothing and the closet was in a bedroom containing mail and a business card with

Blenman's name.  Blenman told the police that only he and his son lived in the

house, acknowledged the existence of the rifles, and stated that he had purchased

the rifles with cash and that the rifles had not been used in any crimes.  As far as

any conflicting testimony among the police officers on whether there was any

women's clothing located in the first floor bedroom, the fact-finder "is the sole

---

[23] 11 *Del. C.* § 1448(b).
[24] *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009).
[25] *Id.*
[26] *Id.*
[27] *Id.* at 420-21.

judge of a witness' credibility and is responsible for resolving conflicts in testimony."[28] And even if there were women's clothing in that bedroom, much more than sufficient evidence of Blenman's constructive possession of the weapons was presented to support his conviction.

(24) Finally, Blenman asserts ineffective assistance of counsel claims based upon Counsel allowing him to appear during trial in prison clothes and failing to request a *Lolly* instruction, present an adequate defense, subpoena witnesses, or object to the State's misconduct. This Court will not review claims of ineffective assistance of counsel for the first time on direct appeal.[29]

(25) This Court has reviewed the record carefully and has concluded that Blenman's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Blenman could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[28] *Pryor v. State*, 453 A.2d 98, 100 (Del. 1982).
[29] *See supra* n.12.