**Donald WRIGHT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 114,2009.

Supreme Court of Delaware.

Submitted: Aug. 19, 2009.
Decided: Aug. 28, 2009.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Elizabeth R. McFarlan, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice.

The defendant-appellant, Donald Wright ("Wright"), appeals from the Superior Court's final judgments of conviction of Rape in the First Degree (eight counts), Rape in the Second Degree, First Degree Unlawful Sexual Contact, and Continuous Sexual Abuse of a Child. Wright argues that the Superior Court erred by not, *sua sponte*, declaring a mistrial, issuing a curative instruction, or striking the introduction of certain allegedly irrelevant and prejudicial evidence. Wright did not raise any objections in the Superior Court.

The record reflects that Wright's defense counsel made a tactical decision to

not object. Accordingly, Wright has waived his right to appellate review in this direct appeal. Therefore, the judgments of the Superior Court must be affirmed.

### *Facts*

Donald and Jada Wright were married on June 1, 2002. Jada Wright ("Jada") had three children from a previous relationship: a thirteen-year-old son and nine-year-old girl and boy twins. The family moved to Middletown, Delaware, in April of 2006. At that time, Jada's daughter Z.H. was twelve years old and in the sixth grade.

Wright and Jada worked different schedules and Wright frequently was alone with Z.H. after school. Z.H. testified that shortly after moving to Middletown, Wright went into Z.H.'s bedroom and forced his penis into her mouth, rubbed her breasts, and touched her vagina with his fingers. Wright repeated that behavior the following week. Both times Wright told Z.H. not to tell anyone. Wright did not touch Z.H. again until the following school year, after her older brother had moved out of the house. At some point during that year, Z.H. contracted strep throat and had to stay home from school for three days. Z.H. testified that during those three days, Wright put his penis in her mouth and vagina twice each day.

In August of 2007, Jada was hospitalized, and, according to Z.H., Wright engaged in oral and vaginal sex with her. Over the next few months, Z.H. testified that Wright forced her to have sex with him on several occasions. In November of 2007, Wright was scheduled to leave the country to begin working in Iraq. The day before he left, he threatened to kill Z.H. if she told anyone about the sexual abuse.

In late December 2007, Z.H. told her aunt that Wright had been abusing her. Z.H.'s aunt told her to write down what had happened to her. Z.H. wrote her aunt a note describing the abuse. On January 2, 2008, Z.H.'s aunt spoke with Jada and told her that Z.H. was being sexually abused by Wright.

The next day, Jada took Z.H. to Christiana Hospital and a forensic nurse administered a rape kit. The following week, Z.H. was interviewed by specialists at the Children's Advocacy Center ("CAC") at the A.I. DuPont Children's Hospital. Around that time, Z.H. began keeping a journal describing her feelings about the abuse.

On March 25, 2008, Wright was arrested. On May 16, 2008, he was indicted on thirty-six counts of Rape in the First Degree, Rape in the Second Degree, Unlawful Sexual Contact in the First Degree, and Continuous Sexual Abuse of a Child. On December 9, 2008, the State entered a *nolle prosequi* on eighteen counts of First Degree Rape and the case proceeded to trial.

At trial, the State's evidence included multiple witnesses, videotapes of the CAC interview, and Z.H.'s journal. During the first day of trial, the prosecutor, without objection, asked Z.H. to read excerpts of her journal into evidence. The excerpts Z.H. read generally conveyed that she was in a great deal of pain, wished that she could commit suicide, and cried frequently. Z.H. inaccurately read one portion of her journal into evidence. The journal entry stated:

> That's one thing I got to change because if I don't . . . I want to go away because I tired of being *abused by certain people in my family* but their going to get theirs soon whatever goes around comes around [sic].

When the prosecutor asked Z.H. to read that portion of the journal to the jury, however, Z.H. testified:

> That's one thing I got to change. I want to go away, because I'm tired of being *abused by certain people, especially my mom's husband.*

Wright's attorney did not object to the journal's admission into evidence or to Z.H.'s inaccurate reading of the above quoted entry. After the prosecutor finished the direct examination of Z.H., the trial judge dismissed the jury for the day. At that point, Wright's defense counsel told the judge that Z.H. had not read her journal entries accurately, but still did not raise any objection.

The next day, when the trial resumed and after Wright's attorney had the entire evening to consider his options, Wright's attorney did not: raise any objections, ask for a curative instruction or move for a mistrial. Instead, he proceeded to cross-examine Z.H. about her journal and her inaccurate direct testimony. During cross-examination, Z.H. admitted that she did not start writing in her journal until after she had told her aunt that Wright was abusing her. Wright's counsel asked Z.H. questions about the contents of her journal, and explored the discrepancies between her testimony and her written words.

Defense counsel produced a copy of the journal entry Z.H. had read aloud the previous day, and asked about the absence of any reference to Wright. Z.H. admitted that she used the phrase, "especially my mom's husband," in her testimony the previous day, and suggested that the copy of the journal entry that defense counsel was showing her was inaccurate. Defense counsel produced the State's exhibit (shown to Z.H. the previous day) and Z.H. admitted that the two were identical. Wright's attorney attempted to question Z.H. further, but Z.H. claimed she did not remember the previous day's testimony.

After a recess, Wright's counsel called Z.H. as a defense witness. By that time, defense counsel had obtained a transcript of the previous day's testimony. He confronted Z.H. about the discrepancies between her testimony and the journal entry that she was asked to read. Z.H. tried to explain the difference, but ultimately claimed that the court reporter incorrectly transcribed her testimony.

Later in the trial, Wright testified in his own defense. He denied engaging in vaginal intercourse with Z.H., but admitted that he engaged in oral sex with Z.H. four times, had ejaculated on her stomach, touched her breasts, rubbed his penis on the outside of her vagina, and placed his fingers in her vagina.

During his closing statement, Wright's attorney presented a credibility argument to the jury. He noted that the many charges before the jury embodied Z.H.'s allegations and that, although Wright admitted to four incidents of sexual contact with Z.H., he denied the remaining counts. Wright's counsel challenged Z.H.'s credibility based on her incorrect reading of her journal entries. Defense counsel characterized Z.H. as "someone who clearly was prone to exaggeration in number and in type of whatever happened to her" and that she was "someone who [was] capable of here, in the courtroom, after being instructed, to just read what you wrote, and she changes it in front of you here, and then when confronted with the transcript, showing what she says, she can't remember."

The jury convicted Wright of Rape in the First Degree (eight counts), Rape in the Second Degree, Unlawful Sexual Contact in the First Degree, and Continuous Sexual Abuse of a Child. The jury "hung" on the remaining charges. On February 13, 2009, Wright was sentenced to a total of 151 years of Level V incarceration, suspended after 140 years for decreasing levels of supervision.

### Parties' Contentions

In this direct appeal, Wright raises two principal arguments. First, Wright ar-

gues that the journal evidence was inadmissible because it was immaterial and unfairly prejudicial. Wright contends that the journal evidence was immaterial and that the journal evidence was unfairly prejudicial, because it conveyed Z.H.'s pain and suffering in a manner intended to inflame the passions of the jury. Second, Wright argues that Z.H. purposefully misread one of her journal entries to sway the jury and affect the outcome of the trial. According to Wright, those errors were so egregious, even in the absence of an objection from defense counsel, that the trial judge was required to take curative action *sua sponte.*

The State submits that Wright's defense counsel made a tactical decision to waive any objection to the journal evidence in order to: first, argue that the journal evidence was self-serving, because Z.H. did not start writing in the journal until after she had told her aunt about the abuse; and second, use the inconsistency between Z.H.'s testimony and her journal entry to impeach her credibility. Because Wright's counsel did not object, the State argues that Wright waived any right to appellate review of the admissibility of the journal evidence and Z.H.'s testimony about the journal.

### Standard of Review

■ Generally, the failure to raise a contemporaneous objection to allegedly inadmissible evidence constitutes a waiver of a defendant's right to raise that issue on appeal, unless the error is plain.[1] Twenty years ago, this Court stated: "Our rules of evidence are clear. A party who fails to raise timely objections to evidence in the trial court [risks] losing the right to raise evidentiary issues on appeal, in the absence of plain error affecting substantial rights."[2]

■ The plain error standard of appellate review is predicated upon the assumption of oversight.[3] Therefore, defense counsel's failure to object to the admission of improper evidence through oversight does not bar plain error review. The plain error standard places the burden on the defendant of demonstrating that trial counsel's oversight resulted in an error that was "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[4]

■ However, if the record reflects that the decision not to object at trial was a "deliberate tactical maneuver by" defense counsel and did not result from oversight, then that action constitutes a true waiver.[5] The United States Supreme Court has stated "no procedural principle is more familiar to this Court than a constitutional right" or a right of any other sort "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."[6] Although there have only been a few cases, this Court has consistently held that a conscious decision to refrain from objecting at trial as a tactical matter is a waiver that will negate plain error appellate review.[7]

1. *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

2. *Tucker v. State,* 564 A.2d 1110 (Del.1989).

3. *Id.*

4. *Baker v. State,* 906 A.2d 139, 150 (Del.2006).

5. *Czech v. State,* 945 A.2d 1088 (Del.2008).

6. *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

7. *Czech v. State,* 945 A.2d 1088 (Del.2008); *Tucker v. State,* 564 A.2d 1110 (Del.1989); *Crawley v. State,* 2007 WL 1491448; *Baker v. State,* 1993 WL 557951.

### Trial Strategy NOT Plain Error

■ In this case, the State argues that the tactical decision of Wright's trial counsel not to object constitutes a waiver that precludes plain error review. We agree. The record supports the State's assertion that Wright's counsel did not object to the admission of the journal evidence for tactical reasons. Wright admitted to four instances of sexual contact with Z.H. and his defense counsel knew about those admissions before trial. Accordingly, the issue before the jury was the degree of Wright's guilt—*i.e.*, on how many of the various charges they should convict—not whether to convict Wright at all.

Because Wright had conceded guilt on some of the charges, the record reflects that defense counsel's only viable strategy was to argue that Z.H. exaggerated the extent of her sexual abuse. Accordingly, Wright's attorney challenged Z.H. on the timing of writing the journal, establishing that Z.H. did not begin writing in it until after she had come forward with her claims of abuse, thus implying that any information in the journal was self-serving.[8] In his closing remarks, Wright's defense counsel also emphasized the fact that Z.H. inaccurately read her journal entries to the jury, and used that inconsistency to argue that Z.H. had a tendency to exaggerate.[9]

The record supports the State's assertion that Wright's failure to object to the admission of the journal into evidence and Z.H.'s testimony was a tactical decision. Wright's counsel used the journal evidence to undermine Z.H.'s credibility and to challenge the magnitude of the prosecution's overall case.[10] Accordingly, we hold that by making a tactical decision not to object at trial, Wright has waived appellate re-view of any arguable claim of error in this direct appeal.[11]

### Conclusion

The judgments of the Superior Court are affirmed.

---

8. *Czech v. State,* 945 A.2d 1088 (Del.2008); *Tucker v. State,* 564 A.2d 1110 (Del.1989).

9. *Czech v. State,* 945 A.2d 1088 (Del.2008).

