IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KYRAN JONES, | § | |
| | § | No. 115, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware, |
| v. | § | in and for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID. Nos. 1307021270A and |
| | § | 1308004537 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 28, 2015
Decided: November 9, 2015
Revised: November 10, 2015

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## <u>ORDER</u>

This 9th day of November, 2015, it appears to the Court that:

(1)    Kyran Jones appeals from his October 10, 2014 Superior Court conviction for first degree assault, attempted robbery, and two counts of possession of a firearm during the commission of a felony.  The court sentenced Jones to eleven years of incarceration.  Jones challenges his conviction on two grounds.  First, he argues a statement made by the prosecutor in the State's closing argument amounted to prosecutorial misconduct and was unduly prejudicial.  Second, he argues that testimony about prior drug sales should have been excluded as inadmissible prior bad act evidence.  We hold that although the prosecutor's

comment was improper, it did not amount to reversible error. As to the evidence of prior drug sales, we hold that Jones has waived appellate review of this contention, and that in any event, the evidence was admissible. Accordingly, we affirm.

(2) On July 25, 2013, Raymond Mayne and his friend Peewee drove to a church parking lot in the Riverside neighborhood of Wilmington to buy heroin from Jones. Peewee drove. Mayne had prior dealings with Jones, who he knew as "Lo," all related to the drug trade. Jones and Mayne had been communicating by mobile phone to arrange the transaction. The pair made contact with Jones while in the car in the parking lot. Mayne examined the product as he sat in the passenger seat of Peewee's car. Dissatisfied with the quality of heroin Jones showed him, Mayne asked for a different variety. Jones assured him that he had the type of heroin that Mayne wanted, but would have to go around the corner to get it. The would-be purchasers waited in the car.

(3) When Jones returned, he pointed a handgun at Mayne and demanded his money. Mayne grabbed the gun, and a struggle ensued. Jones fired several shots. Peewee accelerated at that point, and the two made their escape. As they drove away, Mayne realized he had been shot. They made it to the hospital, where

Mayne was treated and recovered. At the hospital, Mayne identified Jones as the shooter in a photo lineup, although he believed the photo of Jones was old.[1]

(4) Jones was tried before a Superior Court jury from October 8-10, 2014. Before the trial began, the court addressed the admissibility of testimony about prior drug transactions between Mayne and Jones. The parties agreed that the evidence was admissible to show that Mayne knew Jones, and helped to establish his identity as the shooter. Jones did not object to admissibility of this evidence. He merely requested a limiting instruction that it be considered to show identity, and not bad character.[2] The court later gave such an instruction.[3]

(5) Mayne testified at trial, but was not asked by the prosecutor to make an in-court identification. Later, in the State's closing argument, the prosecutor said of Mayne:

> But does he want to come into this courtroom in front of everybody present and point out his Riverside heroin dealer? Think of how he met Lo. That was through somebody else. There was another person out there who made that introduction. What was that person going to think of [Mayne] taking the stand? He knows these people have guns. He knows the hard way that they use those guns.[4]

At this point, Jones objected and the trial judge called counsel to sidebar. The court decided that the statement was not supported by the evidence, but the parties

---

[1] The photo was in fact several years old at the time. App. to Opening Br. at 111 (Trial Test. of Detective Randall Nowell).

[2] App. to Opening Br. at 78-79 (Trial Tr. Oct. 8, 2014); *see also id.* at 88 ("I can't make a good-faith argument that it's more prejudicial to my client than probative in the State's case.").

[3] *Id.* at 105.

[4] App. to Opening Br. at 147 (Trial Tr. Oct. 10, 2014).

3

and the court elected to go on without any curative instruction.[5] The jury later returned a guilty verdict.

(6) On appeal, Jones argues the prosecutor's comment in his closing argument, where he said that Mayne "knows these people have guns, [h]e knows the hard way that they use those guns,"[6] was improper. He claims that it was improper because it was not based on any of the evidence presented at trial. The State argues in response that the statements were a fair inference from Mayne's trial testimony. We agree with Jones that the statements were improper, but hold that the statements did not prejudice Jones, and therefore this isolated instance of misconduct did not amount to reversible error.

(7) This Court's review of prosecutorial misconduct requires a two-step analysis. First, we determine whether misconduct has occurred.[7] If it has not, our analysis ends. If it has, then we must analyze the misconduct under the framework outlined in *Hughes v. State* to determine whether it unduly prejudiced the defendant and thus amounted to reversible error.[8] In *Hughes*, this Court adopted a three-factor balancing test to determine whether prosecutorial misconduct prejudiced the defendant such that it justifies reversal:[9] "(1) the closeness of the

---

[5] *Id.*
[6] *Id.*
[7] *Baker v. State*, 906 A.2d 139, 148-49 (Del. 2006).
[8] *Id.*
[9] 437 A.2d 559, 571 (Del. 1981).

4

case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error."[10]

(8)    The prosecutor's statement amounted to misconduct.  In closing arguments, lawyers are not permitted to express opinions that are not supported by the evidence presented, or are not direct, rational inferences from the evidence presented.[11]  It is prosecutorial misconduct "intentionally to misstate the evidence or mislead the jury as to the inferences it may draw."[12]  Here, the prosecutor's statement that Mayne testified reluctantly because he was afraid of retaliatory violence had no basis in the record.  Mayne merely testified that he was unhappy to be in court testifying under subpoena, without any explanation as to why.[13]  The prosecutor's statement therefore raised an improper inference that Mayne's reluctance was caused by a fear of retaliatory violence, which had no basis in any of the testimony presented.

(9)    Turning to the first *Hughes* factor, this was not a close case.  Mayne positively identified Jones in the photo array shortly after the shooting.[14] Examination of Jones mobile phone revealed communications between the victim

---

[10] *Id.*; *see also Kirkley v. State*, 41 A.3d 372, 376 (Del. 2012).
[11] *Hunter v. State*, 815 A.2d 730, 735 (Del. 2002); *Hughes*, 437 A.2d at 571 ("[T]he prosecutor who labels testimony as a lie runs the risk of passing from a legitimate inference drawn from the evidence to the expression of an impermissible personal opinion.") (internal citations omitted).
[12] *Daniels v. State*, 859 A.2d 1008, 1011 (Del. 2004) (quoting *Sexton v. State*, 397 A.2d 540, 545 (Del. 1979)).
[13] App. to Opening Br. at 97 (Trial Test. of Raymond Mayne) ("Q: Mr. Mayne, would it be fair to say you're not happy to be here today?  A: Yeah.").
[14] App. to Opening Br. at 110 (Trial Test. of Detective Randall Nowell).

and him before the time of the shooting.[15] Forensic analysis of telephone records placed Jones at the location of the crime during the shooting.[16] And Mayne was attempting to buy heroin from, and was shot by, someone with the alias "Lo," who the State presented evidence was actually Jones.[17] This factor weighs against the statement amounting to reversible error.

(10) The second *Hughes* factor, the centrality of the issue affected by the error, does not weigh in Jones' favor. The identity of the shooter was the main issue at trial. The prosecutor's statement had little if anything to do with the identity of the shooter. Whether Mayne was reluctant to testify as to Jones' guilt because of a fear of reprisal did not make it any more or less probable that Jones was the shooter. Because any connection between the statement and the central issue in the trial would be tenuous at best, this factor weighs against the statement amounting to reversible error.

(11) Lastly, no curative instruction was given. This was partially the result of a tactical move on the part of Jones to avoid drawing attention to the statement.[18] Also, the court did not consider the statement overly prejudicial, and believed that its general instruction about inferences from the evidence would be

---

[15] *Id.* at 117-19.

[16] App. to Opening Br. at 124-35 (Tr. Testimony of Special Investigator Brian Daly).

[17] App. to Opening Br. at 128-29 (Tr. Testimony of Detective Robert Nowell).

[18] App. to Opening Br. at 148 (Trial Tr. Oct. 10, 2014) ("You know, I think, just for the record, I could ask that the Court instruct the jury to disregard [the prosecutor's] comments that there was someone out there that could potentially pose a direct threat to the witness, but I don't want to highlight that.").

sufficient to cure any defect.[19] Although the lack of a curative instruction would seem to weigh in favor of a finding of reversible error, in this instance Jones arguably benefited from the fact that attention was not drawn to the statement. In any event, the court's general instruction about inferences had a curative effect. After considering all of the Hughes factors, we find that the prosecutor's improper remarks during closing did not prejudice Jones or result in an unfair trial.

(12) Jones also argues that testimony about prior drug sales should have been excluded as unduly prejudicial, and should be reviewed for plain error. Jones' counsel conceded that such testimony was admissible for the purpose of establishing identity.[20] The State argues that because Jones conceded that evidence of his prior drug dealing was admissible, he has waived any claim of error and the Court should not review for plain error. This Court has held that where a party elects not to object, then a waiver has occurred and plain error review is not available.[21] As such, because Jones consciously elected not to object to the

---

[19] *Id.* ("Let's just pull back on making too much of that particular point. I think that the instruction will cure what was stated in closing.").

[20] App. to Opening Br. at 78-79 (Tr. Transcript Oct. 8, 2014) ("I believe it's admissible under 404(b) with a limiting instruction that the jury is just to use that evidence, that testimony for identity purposes only and not to infer general disposition upon my client to commit prior bad acts, including drug dealing."); *id.* at 88 ("I can't make a good-faith argument that it's more prejudicial to my client than probative in the State's case.").

[21] *Wright v. State*, 980 A.2d 1020, 1023 (Del. 2009) ("[I]f the record reflects that the decision not to object at trial was a deliberate tactical maneuver by defense counsel and did not result from oversight, then that action constitutes a true waiver.") (internal quotations omitted); *id.* ("[T]his Court has consistently held that a conscious decision to refrain from objecting at trial as a tactical matter is a waiver that will negate plain error appellate review."); *see also Stevens v. State*, 3

admission of the evidence, conceding that there was no "good-faith argument" for its exclusion, he has waived this argument.

(13) Even if Jones had not waived appellate review by acquiescing to the admission of the evidence, we would find no plain error. To find that mistakes at trial qualify as plain error, they must be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[22] The defects must be plain and clear from the record, and must be of a "basic, serious and fundamental" character such that they deprive the defendant of a fundamental right or reflect manifest injustice.[23]

(14) Under the relevant evidentiary rule, potentially prejudicial prior bad act evidence is admissible to show identity and for other legitimate purposes.[24] This Court has upheld admission of evidence of prior drug-related conduct when introduced for legitimate purposes.[25] In this case, the prosecutor, the court, and even Jones' counsel agreed that this was admissible to show identity.[26] Mayne's familiarity with Jones, and thus the reliability of his identification, resulted from

A.3d 1070, 1075-77 (Del. 2010); *Czech v. State*, 945 A.2d 1088, 1097-98 (Del. 2008); *Tucker v. State*, 564 A.2d 1110, 1117-18 (Del. 1989).

[22] *Blake v. State*, 65 A.3d 557, 562 (Del. 2013) (citing *Turner v. State*, 5 A.3d 612, 615 (Del. 2010)).

[23] *Id.*

[24] D.R.E. 404(b).

[25] *See Torres v. State*, 979 A.2d 1087, 1098-99 (Del. 2009) (upholding admission of evidence of prior drug transaction to show common scheme or plan); *Williams v. State*, 796 A.2d 1281, 1288 (Del. 2002) (holding it was not plain error to fail to give a limiting instruction related to evidence of prior association with drug dealers to show access to drugs).

[26] App. to Opening Br. at 78-79, 88 (Trial Tr. Oct. 8, 2014).

prior drug deals between the two. Therefore, admission of the prior drug dealing testimony was proper to show identity, and would be upheld even if Jones had not waived his objection to its admission.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

9