IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          :
                           :       I.D. No. 1810006157
        v.                 :
                           :
MATTHEW D. FROST,          :
                           :
        Defendant.         :

Submitted: March 25, 2019
Decided: April 2, 2019

**ORDER**

Upon the State's Motion for Reargument
*Granted.*

Lindsay A. Taylor, Esquire of the Department of Justice, Dover, Delaware; attorney for the State of Delaware.

Stephanie H. Blaisdell, Esquire of the Office of the Public Defender, Dover, Delaware; attorney for the Defendant.

WITHAM, R.J.

## INTRODUCTION

Before this Court is the State of Delaware Department of Justice and its Motion for Reargument pursuant to Superior Court Rule of Civil Procedure 59(e) which applies under Superior Court Rule of Civil Procedure 57(d). After considering the motion, and the Defendant's response in opposition, it appears to the Court that:

## FACTUAL AND PROCEDURAL HISTORY

1. This Court incorporates factual and procedural findings from its order dated March 13, 2019.[1]

2. This Court granted Defendant Matthew Frost's (hereinafter "Defendant") Motion to Suppress on March 13, 2019.[2] The Court granted the Defendant's motion based on its belief that the State had not demonstrated that the Delaware State Police had probable cause to believe that the Defendant was in possession of drug paraphernalia and drugs.

## PARTIES' CONTENTIONS

3. The State moves for reargument regarding that order and bases its argument on three grounds. First, the State contends that the Court misapprehended the appropriate standard for probable cause and the facts of the case in a manner that changed the result of the case. Second, the State contends the Court erred in admitting certain evidence, which it claims was not properly authenticated. Finally, the State argues that the Court misapplied the doctrine of inevitable discovery.

---

[1] *State v. Frost*, 2019 WL 1200331, at *1-3.

[2] *Id.* at *9.

4. In response to the State's motion for reargument, the Defendant argues in opposition that the State has not met its burden to "demonstrate newly discovered evidence, a change in the law, or manifest injustice." The Defendant further argues that the Court correctly applied the legal principles of the inevitability doctrine and that Tfc. Holl's abandonment of seeking verification of the defendant's insurance, establishes only speculation on behalf of the State that the Defendant would not have been able to produce proof of insurance.

## STANDARD OF REVIEW

5. Where the Superior Court Rules of Criminal Procedure provide no rule governing a particular practice, that practice is governed by the Superior Court Rules of Civil Procedure.[3] As a result, a motion for reargument in a criminal case is governed by Superior Court Rule of Civil Procedure 59(e).[4]

6. A motion for reargument pursuant to Rule 59(e) will be granted only if "the Court has overlooked a controlling precedent or legal principles, or *the Court has misapprehended the law or facts such as would have changed the outcome of the*

---

[3] Super Ct. Crim. R. 57(d) ("In all cases not provided for by rule or administrative order, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court.").

[4] Super Ct. Civ. R. 59(e) ("A motion for reargument shall be served and filed within 5 days after the filing of the Court's opinion or decision. The motion shall briefly and distinctly state the grounds therefor. Within 5 days after service of such motion, the opposing party may serve and file a brief answer to each ground asserted in the motion. The Court will determine from the motion and answer whether reargument will be granted. A copy of the motion and answer shall be furnished forthwith by the respective parties serving them to the Judge involved.").

3

*underlying decision.*"[5] A motion for reargument is not an opportunity for a party to rehash arguments already decided by the Court or to present new arguments not previously raised.[6] In order for the motion to be granted, the movant must "demonstrate newly discovered evidence, a change in the law, or manifest injustice."[7]

## DISCUSSION

7. One of the purposes of a Rule 59(e) Motion for Reargument is to provide the Court "with an opportunity to reconsider a matter and to correct any alleged legal or factual errors prior to an appeal."[8] Here, after considering the parties' contentions, the Court agrees with the State that sufficient grounds exist that warrant reargument.

8. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by state agents. Searches are presumptively unreasonable unless they are supported by a valid warrant obtained on a showing of probable cause.[9] The automobile exception, however, permits the police to search a vehicle without a warrant if probable cause exists to believe the vehicle contains

---

[5] *State v. Brinkley*, 132 A.3d 839, 842 (Del. Super. 2016) (emphasis added).

[6] *Id.*

[7] *Id.*

[8] *State v. Abel*, 2011 WL 5925284, at *1 (Del. Super. Nov. 28, 2011) (citing *Bowen v. E.I. duPont de Nemours and Co., Inc.*, 879 A.2d 920, 921 (Del. 2005)).

[9] *State v. Pinkston*, 2011 WL 7051406, at *3 (Del. Super. Dec. 29, 2011); *see also Williams v. State*, 962 A.2d 210, 216 (Del. 2008).

contraband.[10] Police officers may arrest individuals if the officer has probable cause to believe that the individual has committed a crime.[11]

9. An officer has probable cause when he or she has information which would cause a reasonable person to believe that such a crime has taken place.[12] Probable cause is measured "not by precise standards, but by the *totality of the circumstances* through a case by case review of the 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"[13] To establish probable cause, the police need only present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime.[14] The objective facts available to an officer, not his subjective thoughts, control whether he had the power to arrest an individual and conduct a search incident to the arrest.[15]

---

[10] *Pinkston*, 2011 WL 7051406, at *3 (citing *Tatman v. State*, 494 A.2d 1249, 1251 (Del.1985)).

[11] *Stafford v. State*, 59 A.3d 1223, 1228 (Del. 2012) (citing 11 *Del. C. §* 1904(a)(1) (allowing officers to make warrantless misdemeanor arrests "whenever the officer has reasonable ground to believe" that the arrestee has committed a misdemeanor "[i]n the officer's presence"). The Delaware Supreme Court has interpreted "reasonable ground" to mean probable cause. *Tolson v. State*, 900 A.2d 639, 642–43 (citing *Thompson v. State*, 539 A.2d 1052, 1055 (Del.1988)).

[12] *State v. Schleifer*, 2004 WL 343967, at *7 (Del. Super. Feb. 19, 2004) (citing *State v. Maxwell*, 624 A.2d 926, 929-30 (Del.1993).

[13] *Schleifer*, 2004 WL 343967, at *7 *See also Maxwell*, 624 A.2d at 928 (emphasis added).

[14] *Id.* at *7 (citing *Maxwell*, 624 A.2d at 930).

[15] *Stafford*, 59 A.3d at 1228-29; *see also Maryland v. Pringle*, 540 U.S. 366, 372 (2003) (noting that courts determine whether probable cause existed based on the facts as "viewed from the

5

10. The police do not need to prove guilt beyond a reasonable doubt, nor even prove guilt is more likely than not.[16] Additionally, the possibility there may be hypothetically innocent explanations for facts revealed during a police investigation does not preclude a determination that probable cause exists for an arrest.[17]

11. First, the Court finds that it held the State to an impermissible standard regarding probable cause. In the March 13, 2019 order, the Court stated:

> while the Court would not characterize the nail file as in pristine condition, it can not definitively state that the nail file, as presented, is covered partially by heroin residue. For all the Court knows, there could be another substance on the nail file such as rust or dirt."[18]

12. In this case, the Court disagrees with the State that it did not base its determination as to the lack of probable cause pursuant to the totality of the circumstances standard that is mandated by *Maxwell* and its progeny. On the other hand, however, the Court agrees with the State that it misapplied the law as it pertains to certain portions of its analysis. Specifically, it appears that the Court, in its March 13, 2019 order, precluded Tfc. Holl's probable cause to search the Defendant's vehicle based, in part, on the possibility that the nail file was covered in rust or dirt. This innocent explanation for the condition of the nail file is an impressible basis to preclude probable cause.

---

standpoint of an objectively reasonable police officer").

[16] *Schleifer*, 2004 WL 343967, at *7 (citing *Jarvis v. State*, 600 A.2d 38, 43 (Del.1991)).

[17] *Id.* (citing *Maxwell*, 624 A.2d at 930).

[18] *Frost*, 2019 WL 1200331, at *6.

13. Likewise, the Court also finds that it held the State to an improper burden of proof again when it further stated:

> ...it does not appear to the Court, either from the State's submissions, nor Tfc. Holl's testimony, that *any scientific analysis* of the alleged heroin residue was conducted. While the Court does not intend to discount Tfc. Holl's training and experience, the condition of the blade presented to the Court prompts the Court to question why the blade was not analyzed. For no other reason, the nail file *should have been tested* to verify Tfc. Holl's suspicions;[19] and

> [t]he Court would still find, based on the totality of the circumstances, that the nail file, in itself, without confirmation of the presence of heroin residue, was not enough to demonstrate probable cause to search the Defendant's vehicle for other drugs and drug paraphernalia.[20]

14. The Delaware State Legislature passed 16 *Del. C. § 4772* that provides thirteen factors that this Court *shall* evaluate, in addition to other logically-relevant factors, to aid in its determination of whether an object is drug paraphernalia. Those factors are: (1) statements by an owner or by anyone in control of the object, concerning its use; (2) the proximity of the object, in time and space, to a direct violation of this chapter; (3) the proximity of the object to controlled substances; (4) *the existence of any residue of a controlled substance on the object*; (5) direct or circumstantial evidence of the intent of an owner, or of anyone; (6) instructions (oral or written) provided with the object, concerning its use; (7) descriptive materials accompanying the object which explain or depict its use; (8) national and local

---

[19] *Frost*, 2019 WL 1200331, at *7 (emphasis added).

[20] *Id.*

7

advertising concerning its use; (9) the manner in which the object is displayed for sale; (10) whether or not the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products; (11) direct or circumstantial evidence of the ratio of sales of the suspect object to the total sales of the business enterprise; (12) the existence and scope of legitimate uses for the object in the community; and (13) expert testimony concerning its use.[21]

15. In this case, Tfc. Holl stated, based on his training and experience, that he believed the substance he observed on the tip of the file was in fact heroin residue. The Court evaluated the nail file based on section 4772(4) only because at the time that Tfc. Holl observed the nail file in plain view, none of the other drugs and drug paraphernalia had been discovered, which would preclude section 4772(2). Additionally, the Defendant had not confessed any possession of additional drugs and/or drug paraphernalia to Tfc. Holl, which would further preclude section 4772(1). Furthermore, the Court noted in its March 13, 2019 order that it questioned Tfc. Holl's credibility.[22] Keeping these facts in mind, the Court disagrees with the State that it should have, but did not, consider other facts and factors in determining whether the totality of the circumstances demonstrated probable cause.

16. Nevertheless, the State is correct in its assertion that neither Tfc. Holl nor the State was required to prove, beyond a reasonable doubt, nor by the preponderance

---

[21] 16 *Del. C.* § 4772 (emphasis added).

[22] *Frost*, 2019 WL 1200331, at *6.

of the evidence, that the nail file definitively contained heroin at this stage of the criminal proceedings. The Court, by stating that the nail file *should have been tested*, improperly held the State to an impermissible burden of proof and misapplied well-settled Delaware case law that, as previously discussed, states the exact opposite. In light of this, the Court finds additional grounds to grant the State's motion for reargument.

17. The State next argues that the Court impermissibly admitted evidence in the form of a picture of a nail file that it claims did represent a fair and accurate depiction of the item. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.[23] Testimony that an item is what it is claimed to be would satisfy the authentication requirement.[24]

18. The State cites *Lobianco v. State*[25] and *Floudiotis v. State*[26] in support of its assertion that the evidence was not properly authenticated before it was admitted into evidence.

19. In *Lobianco*, the appellant, on appeal, argued that the lower court had abused its discretion by allowing into evidence photographs supplied to local law

---

[23] D.R.E. 901(a).

[24] D.R.E. 901(b)(1).

[25] 894 A.2d 407, 2006 WL 520015 (Del. Mar. 3, 2006).

[26] 726 A.2d 1196 (Del. 1999).

enforcement by her husband.[27] The Delaware Supreme Court found no merit to her argument because the husband had testified at trial that the photos were an *accurate depiction* of his injuries, and this testimony served to sufficiently authenticate the photographs before they were admitted into evidence.[28] Additionally in *Floudiotis*, the Supreme Court found a police officer's testimony that the photographs were a *"pretty accurate depiction"* was sufficient to support a finding that they were what they were purported to be, thereby satisfying the authenticity requirement.[29]

20. In this case the Court finds that the photograph submitted by the Defendant was not properly authenticated before it was admitted into evidence. At the suppression hearing, the Court allowed the photo of the nail file to be admitted into evidence, not withstanding the cropping of the nail file's tip, only after Tfc. Holl had both positively identified it as the nail file he observed and testified that heroin residue was visible on the visible portions of the blade.[30] However, as the State correctly points out, Tfc. Holl never stated that the picture of the nail file *fairly or accurately* depicted the nail file:

Q: Officer, does that appear to be the small metal blade that was on the

---

[27] *Lobianco*, 2006 WL 520015, at *2.

[28] *Lobianco*, 2006 WL 520015, at *2.

[29] *Floudiotis*, 726 A.2d at 1208 (emphasis added).

[30] Suppress Hearing Tr. at 26:8 (The Court notes that the State initially objected to the exhibit being admitted because it was not a fair and accurate depiction of the nail file. *See Id.* at 25:6-7. However, the State did not renew its objection further upon the Defendant's request to have the picture admitted into evidence.).

passenger seat of the vehicle?

A: Yes.[31]

And on re-direct examination, Tfc. Holl testified that the picture of the nail file was not complete:

Q: Tfc. Holl, I have handed you what's been previously marked as

Defendant's Exhibit 1. You identified that as the small metal blade on the seat.

A: Yes.

Q: Is that the entire thing?

A: No.

Q: What is different about it?

A: The tip is cut off and the handle is cut off in the picture, crop.[32]

21.  Because the picture of the nail file was missing the tip, it was not established by the Defendant that the picture was a fair and accurate depiction of the nail file in question.  As a result, the Court, upon further reflection, finds that the evidence should not have been admitted as presented and provides further grounds for granting the State's motion for reargument.[33]

---

[31] *Id.* at 26:5-8.

[32] Suppress Hearing Tr. at 29:15-23.

[33] Assuming arguendo, that the Court denied the State's motion for reargument, and the State appealed to the Supreme Court, the Court finds it is likely that despite the State not renewing its objection to the admittance of Defense Exhibit 1, our Supreme court would reverse due to plain error. *See Wright v. State*, 980 A.2d 1020, 1023 (Del. 2009) (citing *Tucker v. State*, 564 A.2d 1110 (Del. 1989) (A party who fails to raise timely objections to evidence in the trial court [risks] losing the right to raise evidentiary issues on appeal, in the absence of plain error affecting substantial

22. Finally, the State argues that the Court improperly held the State to a higher standard than has been articulated by the Delaware Supreme Court regarding inevitable discovery. However, because the Court has found that it misapplied the law regarding probable cause and allowed Defense Exhibit 1 to be admitted improperly, there is no need to address the issue regarding the inevitable discovery doctrine today. The Court will hear the State's contentions regarding that, and presumably, the Defendant's response, upon reargument.

## CONCLUSION

23. Therefore, for the afore mentioned reasons, and in the interests of justice, the State's Motion for Reargument is **GRANTED**. A hearing will be scheduled as soon as time permits.

**IT IS SO ORDERED.**

Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh
oc:    Prothonotary
cc:    Lindsay A. Taylor, Esquire
       Stephanie H. Blaisdell, Esquire

---

rights.")).